1 /

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                       FOR THE DISTRICT OF OREGON

10

11 ARCH CHEMICALS, INC.,           )
   a Virginia corporation,         )
12                                 )   No.  07-1339-HU
                  Plaintiff,       )
13                                 )
        v.                         )
14                                 )   OPINION AND ORDER
                                   )
15 RADIATOR SPECIALTY COMPANY,     )
   a North Carolina corporation,   )
16                                 )
                  Defendant.       )
17 _____)

18 Robert E. Barton
   Robert E. Sabido
19 Cosgrave Vergeer Kester
   805 S.W. Broadway, Suite 800
20 Portland, Oregon 97205

21 Thomas D. Allen
   Earl W. Gunn
22 Amber E. Tuggle
   Mark R. Johnson
23 Weinberg Wheeler Hudgins Gunn & Dial
   950 East Paces Ferry Road, Suite 3000
24 Atlanta, Georgia 30326
        Attorneys for plaintiff

25

26 ///

27

28 OPINION AND ORDER Page 1

William G. Earle
Paul R. Xochihua
Jonathan Henderson
Davis Rothwell Earle & Xochihua
1300 S.W. Fifth Avenue, Suite 1900
Portland, Oregon 97201
        Attorneys for defendant


HUBEL, Magistrate Judge:

        This is an action by Arch Chemicals, Inc. (Arch) against
Radiator Specialty Company (RSC), asserting claims for common law
indemnity and contribution. Arch seeks recovery of amounts paid in
settlement of a lawsuit against Arch brought by members of the
Davidson family. Two children in the family were killed, and
another child and both parents were seriously injured, after their
Chevrolet Suburban caught fire. The Davidsons had placed multiple
cans of Gunk Engine Brite (Gunk) manufactured by RSC, and a
container of Sock-It, a pool chlorination product manufactured and
sold by Arch, in the cargo area of the Suburban.

        The Davidsons brought an action against Arch, alleging that
the fire and resulting deaths and injuries were caused by the Sock-
It pool treatment. Arch defended the action and subsequently
entered into a confidential settlement with the Davidsons. The
settlement extinguished RSC's liability to the Davidsons.

        Arch alleges in this action that RSC knew or should have known
that 1) Gunk was highly flammable and combustible; 2) any release
and/or discharge of the product could result in combustion,
explosion or fire; 3) Gunk's packaging was defective, so as to
permit its inadvertent release or discharge; and 4) the warnings
and/or instructions on the packages of Gunk failed to adequately

OPINION AND ORDER Page 2

1 warn of unreasonable dangers associated with the product. Complaint

2 ¶¶ 8, 11.

3      RSC now moves for partial summary judgment on Arch's claim

4 based on failure to warn, asserting that the claim is preempted by

5 federal law under the Federal Hazardous Substances Act, 15 U.S.C.

6 §§ 1261-1278 (2007)(FHSA).

7      The FHSA requires warnings on labels for substances deemed

8 hazardous. 15 U.S.C. § 1261. A "hazardous substance" includes,

9 among other things, a substance or a mixture of substances that is

10 toxic, corrosive, an irritant, a strong sensitizer, flammable or

11 combustible, or one that generates pressure through decomposition,

12 heat, or other means, if the substance or mixture can cause

13 significant personal injury or illness as a proximate result of

14 foreseeable use, or the substance is radioactive. See 15 U.S.C. §

15 1261(f)(1)(A),(C); X-Tra Art v. Consumer Product Safety Commission,

16 969 F.2d 793, 793 (9th Cir. 1992). The terms "extremely flammable,"

17 "flammable," and "combustible," as applied to any substance,

18 liquid, solid, or the content of a self-pressurized container, is

19 defined by regulation. 15 U.S.C. § 1261(*l*)(1).

20      A manufacturer violates the FHSA if it "introduces into

21 interstate commerce ... any misbranded hazardous substance." 15

22 U.S.C. § 1263(a). A hazardous substance is "misbranded" if its

23 packaging is "in violation of" a regulation issued under the FHSA

24 or if "such substance ... fails to bear a label--(1) which states

25 conspicuously ... (E) an affirmative statement of the principal

26 hazard or hazards, such as 'Flammable,' 'Combustible,' 'Vapor

27

28 OPINION AND ORDER Page 3

1  Harmful,' ... or similar wording descriptive of the hazard; [and]

2  (F) precautionary measures describing the action to be followed or

3  avoided. ..." 15 U.S.C. §§ 1261(p)(1)(E) and (F); 16 C.F.R. §

4  1500.127 (labels of products with multiple hazards must contain "an

5  affirmative statement of each such hazard" and the "precautionary

6  measures describing the action to be followed or avoided for each

7  such hazard.")

8      There is no dispute that Gunk, because it is combustible, is

9  deemed "hazardous," and is therefore subject to the FHSA.

10                              **Standard**

11      A party is entitled to summary judgment if the "pleadings,

12  depositions, answers to interrogatories, and admissions on file,

13  together with affidavits, if any, show there is no genuine issue as

14  to any material fact." Fed. R. Civ. P. 56(c). Summary judgment is

15  not proper if material factual issues exist for trial. Warren v.

16  City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). A genuine

17  dispute arises "if the evidence is such that a reasonable jury

18  could return a verdict for the nonmoving party." State of

19  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003).

20      On a motion for summary judgment, the court must view the

21  evidence in the light most favorable to the non-movant and must

22  draw all reasonable inferences in the non-movant's favor. Clicks

23  Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir.

24  2001). The court may not make credibility determinations or weigh

25  the evidence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S.

26  133, 150 (2000). Where different ultimate inferences may be drawn,

27

28  OPINION AND ORDER Page 4

1  summary judgment is inappropriate. <u>Sankovich v. Ins. Co. of N. Am.</u>,

2  638 F.2d 136, 140 (9th Cir. 1981).

3                          **Discussion**

4  **A.    Motion for partial summary judgment**

5       RSC's motion rests on two arguments: first, that the FHSA

6  preempts a failure to warn claim based on state law; and second,

7  that RSC is entitled to judgment as a matter of law because the

8  label on Gunk satisfied all the requirements of the FHSA.

9       1.   <u>General requirements of the FHSA</u>

10      The  FHSA  regulations  require  detailed  specific  warning

11 language, as well as the language's location on the product's

12 packaging. See 16 C.F.R. § 1500.121. The FHSA requires that a label

13 include "an affirmative statement of the principal hazard or

14 hazards, such as 'Flammable,' 'Combustible,' 'Vapor Harmful,'

15 'Causes  Burns,'  'Absorbed  through  Skin,'  or  similar  wording

16 descriptive of the hazard." 15 U.S.C. § 1261(p)(1)(E). Under the

17 regulations, any article that presents more than one type of hazard

18 must be labeled with an affirmative statement of each such hazard,

19 the precautionary measures for each hazard, instructions for first

20 aid from the ill effects that may result from each such hazard, and

21 directions  for  handling  and  storage  of  articles  that  require

22 special care because of more than one type of hazard. 16 C.F.R. §

23 1500.127. The label must contain an affirmative statement of the

24 applicable hazard, and an appropriate "signal" word. "Signal word"

25 means "Danger," (for substances that are extremely flammable)

26 "Warning," or "Caution," (for other hazards), as required by

27

28 OPINION AND ORDER Page 5

1  sections 2(p)(1)(C) or (D) of the Act. 15 U.S.C. § 1261(p)(1)(C),
2  (D); 16 C.F.R. § 1500.121(a)(2)(vi), 16 C.F.R. § 1500.3(b)(14). The
3  regulations require that the "signal word and the statement of the
4  principal hazards be blocked together on the principal display
5  panel on the immediate container." 16 C.F.R. § 1500.121[b][2][ii];
6  Richards v. Home Depot, Inc., 456 F.3d 76, 79 (2d Cir. 2006).
7  "Principal display panel" means the portion or portions of the
8  surface of the immediate container, and of any outer container or
9  wrapping, which bears the labeling designed to be most prominently
10 displayed or examined under conditions of retail sale. 16 C.F.R. §
11 1500.121(a)(2)(iv).

12      2.   Preemption by FHSA

13      The FHSA was enacted in 1960, and the purpose of the law was
14 to "provide nationally uniform requirements for adequate cautionary
15 labeling of packages of hazardous substances which are sold in
16 interstate commerce and are intended or suitable for household
17 use." House Committee on Interstate and Foreign Commerce, Federal
18 Hazardous Substances Labeling Act, H.R. Rep. No. 1861, 86th Cong.,
19 2d Sess. 2 (1960), reprinted in 1960 U.S.C.C.A.N. 2833, 2833. As
20 enacted, the FHSA did not contain a preemption clause. When the
21 FHSA was amended in 1966, Congress recommended a "limited
22 preemption amendment which would encourage and permit states to
23 adopt requirements identical with the federal requirements for
24 substances subject to the Federal Act, and to enforce them to
25 complement Federal enforcement." House Comm. on Interstate and
26 Foreign Commerce, Child Protection Act of 1966, H.R. Rep. No. 2166,
27
28 OPINION AND ORDER Page 6

89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 U.S.C.C.A.N., 4095, 4096. The 1966 amendments added the following limited preemption provision:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b)[15 U.S.C. §§ 1261(p) or 1262(b)] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury <u>unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b)</u>.

15 U.S.C. § 1261 note(b)(1)(A)(emphasis added). In <u>Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby</u>, 958 F.2d 941, 945 (9th Cir. 1991), the court held that preemption issues arising under the FHSA were "identical to" those arising under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), despite the difference in the actual preemption language. FIFRA's preemption clause states:

> [A] State shall not impose or continue in effect any requirements for labeling or packaging <u>in addition to or different from</u> those required under this subchapter.

7 U.S.C. § 136v (emphasis added). In <u>Allenby</u>, the court noted that under this language, a state could not require a pesticide manufacturer to change a label from the requirements of FIFRA. <u>Allenby</u>, 958 F.2d at 944. Based on this authority, I construe the phrase "identical to" in the FHSA as analytically the same as prohibiting any labeling requirements "in addition to or different from" for purposes of preemption analysis, and conclude that FHSA precludes a state from requiring labeling that is different from or

OPINION AND ORDER Page 7

1  in addition to FHSA's requirements.

2      In Riegel v. Medtronic, Inc., __ U.S. __, 128 S.Ct. 999

3  (2008), the Supreme Court interpreted a preemption clause in the

4  Medical Devices Act of 1976, 21 U.S.C. § 360c, amending the Federal

5  Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.* (MDA),

6  which preempted state requirements "different from, or in addition

7  to," federal statutory requirements. The Court held that in

8  analyzing such preemption clauses, a court must first determine

9  whether the federal government "has established requirements

10  applicable to" a particular product. If so, the court must then

11  determine whether common law claims are based on state requirements

12  with respect to the product that are "different from, or in

13  addition to," the federal requirements. Id. at 1006.

14      Oregon law provides for a "product liability civil action"

15  against a manufacturer, distributor, seller or lessor of a product

16  for personal injury, death or property damage arising out of a

17  defect in the product, any failure to warn about the product, or

18  any failure to "properly instruct in the use of a product." Or.

19  Rev. Stat. § 30.010. Oregon cases interpreting the statute have

20  held that a product warning is deficient if it is not in a form

21  that "could reasonably be expected to catch the attention of the

22  reasonably prudent person in the circumstances of its use."

23  Benjamin v. Wal-Mart Stores, Inc., 185 Or. App. 444, 454-55 (2002),

24  *quoting* Anderson v. Klix Chemical, 256 Or. 199, 207 (1970). Neither

25  party has drawn the court's attention to any state law that is

26  different from, or imposes requirements in addition to, those of

27

28  OPINION AND ORDER Page 8

1  the FHSA. The FHSA's preemption language does not prevent a state

2  from providing a damages remedy for claims premised on, or

3  "parallel to" the federal requirements. <u>Riegel</u>, 128 S.Ct. at 1011.

4       Nothing in the general product liability statutes of Oregon

5  provides for labeling requirements specifically, and therefore they

6  do not impose different or additional labeling requirements from

7  those of the FHSA. To the extent Arch wants to try and establish

8  liability under the state law claims for labeling requirements that

9  are different from or in addition to those of the FHSA, such claims

10  are preempted. To the extent Arch brings state law claims that seek

11  to impose liability for the violation of FHSA labeling

12  requirements, such claims are not prohibited, but would only

13  provide an alternate theory for the same damages.

14       3.  <u>Determination that Gunk's label is sufficient as a matter of law to preclude Arch's failure to warn claim</u>

15

16       RSC argues that the undisputed facts show the warning label on

17  the Gunk container at issue complied with the FHSA, asserting that

18  the principal hazard for Gunk, as alleged in the complaint, is its

19  propensity to burn, and the words on the label are in full

20  compliance with the requirements of the FHSA with respect to

21  warnings about combustibility.

22       According to the Manufacturer's Material Safety Data Sheet

23  (MSDS) for Gunk, see Declaration of James Wells, Exhibit B, Gunk is

24  a petroleum product with a flash point of 165 degrees. Under the

25  heading, "Unusual Fire and Explosion Hazards," the MSDS states, "At

26  elevated temperatures containers may vent, rupture or burst, even

27

28  OPINION AND ORDER Page 9

1  violently." Id. The Gunk container in this case is an aerosol can.

2  The principal display panel displays the following language:

3      DANGER: FLAMMABLE. HARMFUL OR FATAL IF SWALLOWED. EYE AND
       SKIN IRRITANT. CONTENTS UNDER PRESSURE. READ PRECAUTIONS
4      ON BACK PANEL.[1]

5  Wells Declaration, Exhibit A. Elsewhere on the back of the can, the

6  labeling advises using Gunk only in a well-ventilated room; not

7  exposing Gunk to heat, sparks, open flame or high temperatures; and

8  not puncturing or incinerating the container. Id.

9      RSC asserts that this label satisfies all the requirements of

10 the FHSA. Under 16 C.F.R. § 1500.3(b)(14), the signal word "Danger"

11 is to be used on products containing 10% or more by weight of

12 petroleum distillates. Gunk contains more than 10% by weight of

13 petroleum distillates. See Supplemental Declaration of James Wells.

14 The word "Flammable" is required on the label of a self-pressurized

15 container if, when tested by the method described in 16 C.F.R. §

16 1500.45, the product has a flash point greater than 20 degrees

17 Fahrenheit. When Gunk is so tested, its flash point is greater than

18 20 degrees Fahrenheit. Supplemental Declaration of James Wells.

19     Arch counters that discovery has not yet gone far enough to

20 warrant entry of summary judgment against Arch on this claim. Arch

21 cites Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210

22 F.3d 1099, 1105 (9th Cir. 2000)("[i]n a typical case, in order to

23

24     [1] The Gunk label contains the signal word "Danger," and the
25 warning, "Flammable," because FHSA regulations require such a
   designation based on the percentage of petroleum distillates in
26 Gunk and its aerosolized nature. The precautions on the back
   panel are not completely visible in the photograph of the can
27 attached to the Wells Declaration.

28 OPINION AND ORDER Page 10

1  carry its initial burden of production by pointing to the absence

2  of evidence to support the nonmoving party's claim or defense, the

3  moving party will have made reasonable efforts, <u>using the normal</u>

4  <u>tools of discovery</u>, to discover whether the nonmoving party has

5  enough  evidence  to  carry  its  burden  of  persuasion  at

6  trial.")(emphasis added by Arch). Arch argues that with discovery

7  not yet completed, it has not yet had an opportunity to develop

8  evidence of the potential ways in which the Gunk could have caused

9  the fire, and thus identify the principal hazards about which RSC

10 should have warned its users. Arch cites <u>Milanese v. Rust-Oleum</u>

11 <u>Corp.,</u> 244 F.3d 104 (2nd Cir. 2001), an action brought against Rust-

12 Oleum by a plaintiff who was severely burned after vapors from the

13 Rust-Oleum were ignited by the flame in an adjacent wood burning

14 stove. The Rust-Oleum can warned users on the back to keep the

15 product away from heat, sparks and flame. After the close of

16 discovery, Rust-Oleum moved for summary judgment on the ground that

17 plaintiff's claims were preempted by the FHSA. <u>Id</u>. at 107.

18 Plaintiff asserted that Rust-Oleum failed to comply with the

19 requirements of the FHSA because the can failed to identify vapor

20 flash fires as a "principal hazard" and failed to list the

21 necessary "precautionary measures" as required by 15 U.S.C. §

22 1261(p)(1). <u>Id.</u> at 108. The court held that there was a genuine

23 issue of fact on whether the danger of flash fire caused by the

24 vapors was a primary hazard that was distinct from the flammability

25 of the product, thereby requiring a separate warning.

26 ///

27

28 OPINION AND ORDER Page 11

1    Arch argues that under the <u>Milanese</u> decision, a product can
2  have more than one hazard associated with combustion, and that
3  potential hazards may be revealed in discovery which significantly
4  alter the analysis of a product's warnings under the FHSA. Arch
5  asserts that it must be given the opportunity to determine through
6  discovery whether other dangers associated with Gunk are "principal
7  hazards" that RSC was required to identify on the principal display
8  panel of the container, and whether RSC warned of the necessary
9  "precautionary measures" pertaining to those hazards. Arch contends
10 that because discovery has not been completed in this case, the
11 evidentiary record does not permit the court to conclude, as a
12 matter of law, that the language on Gunk's principal display panel
13 provided the requisite warning of Gunk's principal hazards. *Compare*
14 <u>Richards v. Home Depot, Inc.</u>, 456 F.3d 76 (2d Cir. 2006)(failure to
15 provide adequate warning against hazardous vapors on principal
16 display panel meant product was misbranded under FHSA, so that
17 action was wrongly dismissed as preempted).

18    By means of an affidavit from counsel, Arch moves under Rule
19 56(f) of the Federal Rules of Civil Procedure for more time to
20 develop evidence with which to oppose RSC's motion for summary
21 judgment.

22    I agree with Arch that the current state of the record does
23 not permit the court to rule, as a matter of law, that the warning
24 label on Gunk was adequate to warn against all principal hazards of
25 the product. It is early in the case.  At the Rule 16 conference,
26 on December 6, 2007, RSC informed the court of its intention to

27

28 OPINION AND ORDER Page 12

1  file an early motion for summary judgment testing preemption as a

2  matter of law, not the adequacy of its warnings under federal law.

3  I therefore grant Arch's Rule 56(f) motion and deny RSC's motion

4  for summary judgment with leave to renew the motion after

5  discovery.

6  **B.  Motion to strike Wells Declaration**

7  RSC relies on the Declaration of James Wells as evidentiary

8  support for summary judgment on the failure to warn claim. James

9  Wells states that he was employed by RSC from 1972 until April

10  2002, during which time he was, among other things, Vice President

11  of Chemical Operations. Wells Declaration ¶ 4. Wells states that he

12  is "familiar with both the chemical composition as well as the

13  packaging of Gunk ... and its warning language." <u>Id.</u> at ¶ 6. Wells

14  states that he is also "familiar with the Federal Hazardous

15  Substances Act and the regulations promulgated thereunder." <u>Id.</u> at

16  ¶ 7. Wells states his opinion that at all times relevant to this

17  litigation,

18      the warning language on [RSC]'s packaging for its aerosol
19      cans of [Gunk] fully comply with the Federal Hazardous
       Substances Act.

20  <u>Id.</u> at ¶ 9.

21  Arch moves to strike the Wells Declaration, on the ground that

22  it is opinion testimony without adequate foundation. Wells states

23  that he is "familiar with the chemical composition" of Gunk, and

24  familiar with the requirements of the FHSA, but Arch argues that

25  this knowledge is not sufficient to support an expert opinion

26  entitling Arch to summary judgment in its favor on the failure to

27

28  OPINION AND ORDER Page 13

1  warn claim.

2     Given the rulings above, it is not necessary to reach this

3  issue. However, since the issue may recur, I address it now. I

4  disagree with Arch that the Wells Declaration should be stricken in

5  its entirety. Wells is not tendered as an expert and with the

6  exception of the first sentence of paragraph 9, his

7  declaration is factual. The first sentence of paragraph 9 is

8  stricken.

9  **C.  Request to deem some facts admitted**

10    In view of the fact that discovery is not complete in this

11 case, and that the court is considering Arch's response to RSC's

12 motion for partial summary judgment as a request made under Rule

13 56(f) of the Federal Rules of Civil Procedure, RSC's request,

14 contained in its Response to Arch's Concise Statement of Material

15 Fact (CSF), to deem paragraph 3 and a portion of paragraph 4 of its

16 CSF admitted, because Arch has not cited to evidence contradicting

17 those statements, is denied.

18 **D.  Motions to compel**

19    RSC has filed motions to compel responses to its

20 Interrogatories 1, 2 and 3. The motion to compel is granted with

21 respect to Interrogatories 1 and 2. The responses to the

22 interrogatories are to be used only for counsel's guidance in

23 preparing the case, and cannot be used to impeach or cross examine

24 witnesses.

25    The motion to compel is granted with respect to Interrogatory

26 3, subject to the protective order.

27

28 OPINION AND ORDER Page 14

1    The motion to compel is denied with respect to Requests for
2  Production 9 and 11.

3    The motion to compel is denied with respect to Requests for
4  Production 5, 6 and 12, with leave to refile the motion.

5                              **Conclusion**

6    Arch's request, not docketed as a motion, for a continuance to
7  conduct further discovery is GRANTED.

8    RSC's motion for partial summary judgment (doc. # 16) that 1)
9  the labeling requirements of FHSA preempt any different or
10 additional state labeling requirements is GRANTED; and 2) that its
11 warnings were adequate as a matter of law is DENIED, with leave to
12 renew the motion after the completion of discovery and before the
13 deadline for dispositive motions.

14    Arch's motion to strike the Wells Declaration (doc. # 26) is
15 DENIED, except for the first sentence of paragraph 9.

16    RSC's Motion to Compel (doc. # 35) is GRANTED in part and
17 DENIED in part.

18    IT IS SO ORDERED.

19

20    Dated this <u>18th</u> day of <u>July</u>, 2008.

21

22                              /s/ Dennis James Hubel
                                Dennis James Hubel
23                              United States Magistrate Judge

24

25

26

27

28 OPINION AND ORDER Page 15