IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARCH CHEMICALS, INC.,            )
a Virginia corporation,          )
                                 )   No.  07-1339-HU
           Plaintiff,            )
                                 )
     v.                          )
                                 )   OPINION AND ORDER
                                 )
RADIATOR SPECIALTY COMPANY,      )
a North Carolina corporation,    )
                                 )
           Defendant.            )
─────────────────────────────────)

Robert E. Barton
Robert E. Sabido
Cosgrave Vergeer Kester
805 S.W. Broadway, Suite 800
Portland, Oregon 97205

Thomas D. Allen
Earl W. Gunn
Amber E. Tuggle
Mark R. Johnson
Weinberg Wheeler Hudgins Gunn & Dial
950 East Paces Ferry Road, Suite 3000
Atlanta, Georgia 30326
     Attorneys for plaintiff

///

OPINION AND ORDER Page 1

William G. Earle
Paul R. Xochihua
Jonathan Henderson
Davis Rothwell Earle & Xochihua
1300 S.W. Fifth Avenue, Suite 1900
Portland, Oregon 97201
     Attorneys for defendant

HUBEL, Magistrate Judge:

    This is an action by Arch Chemicals, Inc. (Arch) against Radiator Specialty Company (RSC), asserting claims for common law indemnity and contribution. Arch seeks recovery of amounts paid in settlement of a lawsuit against Arch brought by members of the Davidson family. Before the court are three motions, Defendant"s Motion to Dismiss Contribution and Indemnity Claims (doc. # 88); Defendant's Motion to Add Lexington Insurance as a Plaintiff and Strike Ratification (doc. # 91); and Defendant's Motion for Leave to Amend Answer and Affirmative Defenses (doc. # 95). The three motions present two issues. The first is whether Arch is precluded from claiming contribution from RSC for any settlement amounts that reflected Arch's exposure to punitive damages. The second is whether Arch's liability insurer, Lexington Insurance Company (Lexington) is a real party in interest that should be joined as a plaintiff in this action or whether a ratification executed by Lexington defeats RSC's efforts to join Lexington as a plaintiff.

## Factual Background

    This case arises out of the wrongful death and bodily injury claims brought by the Davidson family against Arch, the manufacturer of a swimming pool product containing calcium hypochloride (CalHypo) called Sock-It. In June 2002, the Davidsons'

OPINION AND ORDER Page 2

car, which had Sock-It in the cargo compartment, caught fire. The parents and one child were severely injured and the other two children died.

The original complaint, filed by the three surviving members of the Davidson family on April 20, 2004, asserted claims against Arch and other defendants. Xochihua Declaration, Exhibit A. The claims did not include a prayer for punitive damages; Oregon law prohibits pleading punitive damages unless, upon hearing, the trial court allows the plaintiff to amend the complaint to assert such a claim. Or. Rev. Stat. § 31.725. After such a hearing in the Davidson case, plaintiffs were given leave by the court to pursue punitive damages against Arch only. Xochihua Declaration, Exhibit D. On June 14, 2006, the Davidsons filed an amended complaint with a prayer for $200 million in punitive damages, as well as varying amounts of economic damages and $40 million in noneconomic damages for each plaintiff and for the estates of the two decedents. Plaintiff's Response to Defendant's Motion to Dismiss, Exhibit A; Xochihua Declaration Exhibit H (Amended Complaint). The allegations of the Amended Complaint pertinent to the issue of punitive damages against Arch are as follows:

> For many years, and up to the present time, the Arch/Olin Defendants have manufactured and sold "Sock It" and other similar calcium hypochlorite products with high percentages of available chlorine, packaged in plastic pouches. These actions were taken with knowledge that the products were inherently unsafe and likely to cause potentially catastrophic fires, unexpected by the consumers, that could cause devastating injury or death to such consumers, including these Plaintiffs. Such acts were taken with conscious and reckless disregard of these risks to consumers, and with knowledge that safer products and packaging were available and feasible, but

OPINION AND ORDER Page 3

> potentially more expensive. These Defendants also sought to conceal the true risks of their products from the public, further enhancing the risk of catastrophic injury or death. Such facts and circumstances entitle the Plaintiffs to an award of punitive damages in a reasonable amount not to exceed $200,000,000.

Id. at ¶ 15.

In December 2006, Arch settled with the Davidsons pursuant to a confidential Revised Settlement Agreement (Settlement Agreement), which has been filed under seal. Xochihua Declaration Exhibit B. The Settlement Agreement released all claims against Arch, but did not explicitly mention punitive damages or segregate them from compensatory damages. However, the Settlement Agreement does state:

> All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code and physical injuries or physical sickness within the meaning of Section 130(c) of the Internal Revenue Code.[1]

Id. at p. 2-3.

Arch and Lexington jointly funded the settlement. Nine months later, Arch brought this action for contribution against RSC, the manufacturer of an engine degreaser, Gunk, that was also in the Davidson vehicle at the time of the fire. RSC asserts that it was not put on notice of the contribution action until Arch wrote RSC a demand letter in August 2007, then filed this action on September 7, 2007. Xochihua Declaration ¶ 7.

Lexington is not a plaintiff in this case. Arch filed a "Ratification" on October 1, 2007, stating that Lexington

---

[1] 26 U.S.C. § 104(a) provides that "gross income does not include ... (2) the amount of any damages (*other than punitive damages*) received ... on account of personal physical injuries or physical sickness..." (Emphasis added)

OPINION AND ORDER Page 4

authorized Arch to pursue the contribution "in its own name and for its benefit as well as for the benefit of Lexington," and agreeing "to be bound by the final determination in this case, and not to bring any separate action in its own name and right" against RSC.

RSC seeks to make Lexington a plaintiff and have the ratification stricken so that the claim is prosecuted by the real party in interest.

**Discussion**

1. <u>Defendant's motion to dismiss contribution and indemnity claims for seeking to shift punitive damages</u>

As a threshold matter, Arch asserts that RSC's motion to dismiss the contribution and indemnity claims should be converted to a motion for summary judgment because matters outside the pleadings are part of RSC's motion. See Xochihua Declaration and accompanying exhibits. I agree. Accordingly, RSC's motion to dismiss is converted to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.

RSC asserts that because 1) the Davidsons were permitted to go forward with a punitive damages claim; 2) the Davidsons amended their complaint to allege that Arch marketed Sock-It with knowledge that it was inherently unsafe, acted with conscious and reckless disregard of risks to consumers, and with knowledge that safer alternatives were feasible, but more expensive, and sought to conceal the true risks of the product from the public; and 3) Arch settled with the Davidsons a few months after the punitive damages claim was asserted, the settlement with the Davidsons necessarily included punitive damages. RSC acknowledges that Arch has denied

OPINION AND ORDER Page 5

any part of the Davidson settlement was based on punitive damages, but contends that Arch has never provided any factual support for this position.

RSC contends that whatever part of the settlement was for punitive damages cannot be shifted to RSC as a joint tortfeasor, because, if it committed willful or wanton misconduct, Arch is disqualified from invoking Oregon's comparative fault statute, Or. Rev. Stat. § 31.600, and shifting liability for the punitive damages portion of the Davidson settlement to RSC. RSC relies primarily on Hampton Tree Farms v. Jewett, 158 Or. App. 376 (1999) and Shin v. Sunriver Preparatory School, Inc., 199 Or. App. 352 (2005). In Hampton Tree Farms, the court held that willful misconduct was "qualitatively different" from negligence, because negligence "consists of a continuum of fault from simple negligence through gross negligence to recklessness," and willful misconduct "is not on that continuum." 158 Or. App. at 395. The court found negligence and willful misconduct "not comparable" because willful misconduct, unlike negligence, "involves a conscious decision to act in a way that risks harm to another." Id. RSC argues that in Shin, the court applied the analysis of Hampton Tree Farms to hold that Oregon's comparative fault statute did not permit a comparison between negligent and intentional tortfeasors. Id. at 372-77. Consequently, RSC argues, only when two tortfeasors are each ordinarily negligent may one be liable to the other for contribution. RSC cites Jensen v. Alley, 128 Or. App. 673, 677 (1994), where the court held that only compensatory damages

OPINION AND ORDER Page 6

exposure constitutes the "common liability" shared by tortfeasors, while punitive damages address specific actions and motivations of particular defendants, citing Hayes Oyster Co. v. Dulcich, 199 Or. App. 43, 52 (2005). Hence, such "individualized" damages are not part of any "common liability" that RSC shares with Arch.

RSC requests that Arch be required to prove what portion of the settlement represents punitive damages so that they can be segregated from the compensatory damages portion; if Arch is unable to do so, RSC asks that this action be dismissed.

Arch counters that RSC's motion requires the court to determine that, based on the evidence in the record, no reasonable person could conclude anything other than that Arch was guilty of intentional misconduct--when no such evidence exists.

First, Arch points out, there has been no finding or adjudication that Arch was an intentional or willful tortfeasor-- only allegations by the Davidsons in the amended complaint.

Second, Arch argues that even if an allegation could constitute an adjudication of liability for punitive damages, the Davidsons alleged that Arch was liable for punitive damages because of gross negligence or recklessness, not because Arch acted intentionally or with malice. See Amended Complaint ¶ 15 (quoted above). Arch points out that under Oregon law, punitive damages are recoverable only upon a clear and convincing showing that the defendant acted with conscious indifference to the welfare of others and *either* malice or reckless and outrageous indifference to a highly unreasonable risk of harm. Or. Rev. Stat. § 31.730(1). The

OPINION AND ORDER Page 7

"malice" prong entails a showing of an "*intentional* doing of a wrongful act, without just cause or excuse and with intentional disregard of the social consequences." Blades v. White Motor Credit Corp., 90 Or. App. 125, 130 (1998)(emphasis added). Arch contends that the Davidsons elected to proceed under the "reckless and outrageous indifference" standard, not "malice." See Amended Complaint ¶ 15 ("Such acts were taken with *conscious and reckless disregard* of these risks").(Emphasis added) Consequently, says Arch, a comparison of RSC and Arch's respective fault is appropriate, since even gross negligence or recklessness permit consideration of comparative fault.

Arch argues that in the absence of any proof or prior adjudication of intentional conduct on the part of Arch, the Shin holding is inapplicable to this case, and that the controlling authority is DeYoung v. Fallon, 104 Or. App. 66, 70 (1990), holding that the comparative fault statute applies in actions based on negligence, and Hampton Tree Farms, 158 Or. App. at 395, holding that comparative fault applies to situations where the defendant is liable because of negligence, however aggravated.

Third, Arch asserts that RSC is wrong in its argument that unless Arch can affirmatively prove that it acted only negligently, it should be completely barred from pursuing contribution from RSC. Arch contends that RSC has attempted to place on it the burden of proving the *absence* of punitive damages from the settlement, without citing any legal authority to that effect and contrary to the principle that a plaintiff need not disprove an affirmative

OPINION AND ORDER Page 8

defense in order to survive summary judgment.

Arch takes issue with RSC's contention that the Davidson settlement was "triggered" by the court's allowing the Davidsons to pursue a claim for punitive damages. Arch characterizes this as pure speculation on RSC's part, based on nothing more than temporal proximity, because RSC has no way of knowing what "triggered" the settlement.

Arch challenges RSC's alternative argument that the court should require Arch to segregate the punitive damages component of the settlement or suffer dismissal, arguing that there is no ***evidence*** that any of the settlement proceeds represented punitive damages. Arch directs the court to its interrogatory responses ("none of the Davidson settlement amount was based on punitive damages," Plaintiff's Response to Defendant's First Interrogatories ¶ 4, attached as Exhibit B to Plaintiff's Response) and to the Settlement Agreement itself, in which the Davidsons and Arch agreed that the entire settlement was for personal injuries and excluded punitive damages.

In reply, RSC challenges Arch's characterization of the allegations in the Amended Complaint as not alleging intentional or willful misconduct amounting to "malice" under Or. Rev. Stat. § 31.730. RSC first points out that Oregon does not draw a clear either-or distinction between malice and recklessness. See, e.g., Linkhart v. Savely, 190 Or. 484, 505-06 (1951):

> In civil cases malice has been held to mean the intentional doing of [an] injurious act without justification or excuse. A tort committed with a bad motive *or so recklessly* as to be in disregard of social

OPINION AND ORDER Page 9

> obligations, or an act wantonly, maliciously, or wickedly done, *is such a malicious act* as authorizes the awarding of punitive damages.

(Emphasis added) RSC argues that paragraph 15 of the Davidsons' Amended Complaint alleges the intentional doing of an injurious act without justification or excuse, and also indicates intentional conduct by Arch in the form of active concealment of the true risks of its products to the public; the allegations therefore fall within the Oregon Supreme Court's definition of "malice" in <u>Linkhart</u>.

If it is established to the factfinder's satisfaction that a portion of the settlement included punitive damages, that portion is not available to Arch in its quest for contribution. This is not an all or nothing proposition. As to the burden of proof on whether the punitive damages are or were part of the settlement, Arch's burden is to establish that some part of the settlement represents damages for which contribution is available. Arch has created an issue of fact precluding RSC from summary judgment regarding <u>any</u> portion of settlement. It is likely they will get to the jury on this issue, but that will have to await the trial. Assuming RSC presents evidence that some portion of the settlement was for punitive damages, the jury will have to decide what part of the settlement did <u>not</u> involve punitives. It seems likely a jury will conclude a significant sum did not. Whatever part, if any, the jury cannot say more likely than not was for compensatory damages and not punitive damages, they will need to exclude from any contribution award they decide Arch is otherwise entitled to

OPINION AND ORDER Page 10

receive.

In addition, RSC argues that the court's order allowing the Davidsons to seek punitive damages was not based merely on the Davidsons' allegations. Under Or. Rev. Stat. § 31.725(3), to assert a claim for punitive damages, the Davidsons were required to submit affidavits and supporting documentation setting forth specific facts supported by admissible evidence adequate to avoid the granting of a motion for a directed verdict. After considering the evidence submitted by the Davidsons, the state court granted the motion to amend the complaint. RSC argues that in so doing, the court determined that there was sufficient evidence from which a jury could conclude that Arch was liable for punitive damages; had the case not settled, the issue of punitive damages would have gone to the jury.

The procedural quirk of Or. Rev. Stat. § 31.725(3) does not require the judge deciding the motion to make findings of fact regarding liability for punitive damages. It is more akin to a decision that there is a good faith basis for seeking punitive damages at a preliminary phase of the case. Normally a defendant does not marshal its proof against punitive damages at that time for presentation to the court. The state court's decision to allow the amended complaint seeking punitive damages is not in any way predictive of whether the jury would in fact be presented with the punitive damages claim during deliberations.

I am unpersuaded by RSC's arguments. The settlement agreement itself provides no evidence that punitive damages were included in

OPINION AND ORDER Page 11

the settlement amount. Both the Davidsons and Arch had motives for settling the case on terms that did not include punitive damages. Because Arch was not permitted to present contrary evidence at the punitive damages hearing, the court's determination that there was sufficient evidence to permit the Davidsons to amend the complaint establishes nothing more than that the Davidsons' allegations were made in good faith.

RSC's motion to dismiss, which the court has converted to a motion for summary judgment, is denied. RSC's request that Arch be required to segregate the settlement amounts or otherwise demonstrate that some or all of the settlement agreement does not represent punitive liability, is denied.

    2.    <u>Defendant's motion to add Lexington as a plaintiff and strike ratification</u>

        a.    Joinder of Lexington

RSC moves the court to join Lexington as a party plaintiff under Rule 19(a) of the Federal Rules and to strike the ratification filed on Lexington's behalf by Arch. RSC asserts that Arch and Lexington both qualify as parties needed for a just adjudication, and that unless they are joined, RSC's ability to defend against the contribution claim is substantially impaired because RSC is deprived of the ability to prove up some equitable defenses to contribution. Now that RSC has filed a withdrawal of defenses (doc. # 141), only one separate affirmative defense is proposed against Lexington, namely that it is subject to all defenses against Arch.

///

OPINION AND ORDER Page 12

RSC seeks joinder under Rule 19(a)(1) of the Federal Rules of Civil Procedure. As a threshold matter, Arch contends that the motion is untimely, because the court previously set the deadline for filing motions to amend a pleading to add a party or a claim as February 1, 2008. Arch argues that the court should dismiss the instant motion because it was brought over a year after the court-ordered deadline. RSC responds that these motions are the result of discovery late last year and early this year, so that RSC could not have brought them before expiration of the deadline.

The parties agree that Lexington is a real party in interest as defined by Oregon law, and that Rule 19 of the Federal Rules of Civil Procedure governs the question of joinder.

As a general rule, joinder is approached on a case by case basis. See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968)(court is to examine "practical factors of individual cases" and resolve them "in the context of the particular litigation").

Rule 19 provides as follows:

(a) Persons Required to be Joined if Feasible
    (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
    (A) in that person's absence, the court cannot accord complete relief among existing parties; or
    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
        (I) as a practical matter impair or impede the person's ability to

OPINION AND ORDER Page 13

>                     protect the interest; or
>                     (ii) leave an existing
>                     party subject to a
>                     substantial risk of
>                     incurring double,
>                     multiple, or otherwise
>                     inconsistent obligations
>                     because of the interest.

There is no issue that Lexington is subject to service of process and that Lexington's joinder will not deprive the court of subject matter jurisdiction. With respect to the "complete relief" requirement, RSC contends that as part of its contribution defense, it is entitled to have equitable affirmative defenses it possesses against Lexington adjudicated by the trier of fact, and that without this, RSC will be denied complete relief in contravention to Rule 19(a)(1)(A).

Arch asserts that "complete relief" under Rule 19(a) does not encompass defensive relief, and that Rule 19(a) does not permit consideration of the potential unavailability of *defenses* in determining whether "complete relief" can be afforded. Arch cites a civil rights case from a district court in North Carolina, Pettiford v. City of Greensboro, 556 F. Supp.2d 512, 517-18 (M.D.N.C. 2008) and cases cited therein. The Pettiford case is not persuasive for several reasons. First, it does not stand for the proposition that defenses cannot be considered on the Rule 19 requirement of complete relief. In fact, the Pettiford court noted that "there is no precise formula for determining compulsory joinder under Rule 19," and that "because the ultimate goal is to achieve complete and effective relief, ... a few courts have held

OPINION AND ORDER Page 14

that the term 'complete relief' incorporates the presentation of defenses." 556 F. Supp.2d at 518. Second, none of the cases cited in Pettiford is from this jurisdiction, and Pettiford is distinguishable on both factual and legal grounds. Nor does it appear, from the parenthetical explanations given by the court, that any of the cases cited in Pettiford stands squarely for the proposition that Rule 19(a) does not *allow* the court to consider defenses when determining whether joinder is proper; rather, each case seems to have been decided on its specific facts. The argument that "complete relief" automatically precludes defenses is not persuasive.

RSC's motion for to join Lexington as a plaintiff is granted.

    b.   Striking ratification

The issue presented by this motion is whether Lexington's ratification pursuant to Rule 17(a) is a proper alternative to joinder under Rule 19.

Rule 17 (a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

The requirement of Rule 17 that an action be prosecuted in the name of a real party in interest is based on the principle that the pleadings "should be made to reveal and assert the actual interest of the plaintiff, and to indicate the interests of any others in the claim." United States v. Aetna Cas. & Sur. Co., 338 U.S. 366,

OPINION AND ORDER Page 15

382 (1949).

RSC asserts that the ratification by Lexington is inconsistent with the "limited purpose" of ratification contemplated by Rule 17. Although neither side cited authority from the Ninth Circuit in its motion papers, ample authority from this jurisdiction limits the applicability of ratification under Rule 17(a) to those cases involving an understandable mistake. See, for example, Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004)(ratification under Rule 17(a) permitted so long as plaintiff's decision to sue in his own name represented "an understandable mistake and not a strategic decision"); Goodman v. United States, 298 F.3d 1048 (9th Cir. 2002):

> [The last sentence] in Rule 17(a) "is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." 6A Wright, Miller & Kane, § 1555 at 412; United States for Use and Benefit of Wulff v. CMA, Inc., 890 F.2d 1070, 1074 (9th Cir. 1989)(stating that "[t]he purpose of this portion of Rule 17(a) is to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made"). Wright & Miller further states that "[a] literal interpretation of the last sentence of Rule 17(a) would make it applicable to every case in which an inappropriate plaintiff has been named." 6A Wright, Miller & Kane, § 1555 at 415. However, the treatise goes on to caution that "the rule should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice." Id.

See also 6A Wright, Miller & Kane § 1555, 415 ("[I]t has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then the last sentence of Rule 17(a) was not applicable..."); Wulff, 890 F.2d at 1075 (when plaintiffs knew they were not real party in

OPINION AND ORDER Page 16

interest, "there was no difficulty and no mistake in determining who was the proper party to bring suit."); Spangler v. Pasadena City Bd. of Educ., 537 F.2d 1031, 1035 (9th Cir. 1976)(Last sentence of Rule 17(a) "not applicable ... when there is no difficulty in determining the right party to bring an action and when there has been no excusable mistake made in selecting the party")(Wallace, J., dissenting on other grounds); In re Phenylpropanolamine Products Liability Litigation, 2006 WL 2316722 (W.D. Wash. 2006)("The plain language of [Rule 17(a)] is broad, but courts have imputed some limitation on its application. In particular, a plaintiff must show that his decision to sue in his own name was an understandable mistake," citing Dunmore at 358 F.3d at 1112)(internal quotation marks omitted).

Arch does not dispute that Lexington is a real party in interest, and does not claim that it made a mistake by suing in its own name. Since the circumstances permitting ratification under Rule 17(a) are not present in this case, the ratification is stricken.

    3. <u>Defendant's motion to amend answer and affirmative defenses</u>

RSC moves pursuant to Rule 15(a) to amend its answer and affirmative defenses, based on information obtained in discovery that additional defenses should be asserted against Arch and that Lexington should be joined as a party so that RSC can assert other affirmative defenses against Lexington. Most of these "other defenses" have now been withdrawn (doc. # 141).

///

OPINION AND ORDER Page 17

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." This rule represents a "strong policy permitting amendment." Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991). The liberality of the rule is qualified by the requirement that the amendment not cause undue prejudice to the opposing party, is not sought in bad faith, and is not futile. Green v. City of Tucson, 255 F.3d 1086, 1093 (9th Cir. 2001). Thus, whether leave to amend should be granted is generally determined by considering the following: 1) undue delay; 2) bad faith; 3) futility of amendment; and 4) prejudice to the opposing party. Lockheed Martin v. Network Solutions Inc., 194 F.3d 980, 986 (9th Cir. 1999).

Not all of the factors merit equal weight. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2002)(per curiam). The consideration of prejudice to the opposing party carries the greatest weight, and is the "touchstone of the inquiry under Rule 15(a)." Id. at 1052. Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under rule 15(a) in favor of granting leave to amend. Id.

Although delay is not a dispositive factor in the amendment analysis, it is relevant, Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990), especially when no reason is given for the delay. Swanson v. United States Forest Serv., 87 F.3d 339, 345 (9th Cir. 1996). Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend. Morongo Band, 893 F.2d at 1079.

OPINION AND ORDER Page 18

The proposed revised amended answer adds affirmative defenses against Arch of 1) failure to apportion punitive and compensatory damages in the Settlement Agreement; and 2) willful and wanton misconduct in manufacturing, marketing and selling its CalHypo product. The proposed revised amended answer asserts the following affirmative defenses against Lexington: 1) failure to state a claim; 2) preemption by federal law; 3) statute of limitations; and 4) defenses barring partial subrogee insurer are same as defenses applicable to Arch.

First, Arch points out that the deadline for filing a motion to amend a pleading to add a party or a claim was February 1, 2008. This objection is obviated by RSC's contention that the motion to amend is based on discovery obtained late in 2008 and early in 2009.

Arch asserts that it would "unquestionably be prejudiced" if the court allowed RSC to amend its pleading 17 months after the action was commenced and very shortly before discovery expires. But the only actual prejudice Arch mentions is, first, that discovery would again have to be extended, to allow Arch to discover the basis of the newly asserted affirmative defenses, and, second, that it is "self-evident" that there is a substantial risk of prejudice to an insurer that is forced to join as a plaintiff, because the presence of an insurer may affect a jury's decision on the merits, citing Stouffer Corp. v. Dow Chemical Co., 88 F.R.D. 336, 338 (E.D. Pa. 1980). I am unpersuaded that the extension of discovery would prejudice Arch. I am not convinced the new defense against Arch

OPINION AND ORDER Page 19

even requires much discovery not already in the hands of Arch. As for the presence of an insurer tainting the jury's deliberations, that is an issue that can be decided later in this litigation; the jury does not see the pleadings, juries are sophisticated about insurers, and potential prejudice can be addressed in the instructions. Beyond a potential instruction, a real party in interest cannot hide its own identity.

The motion to amend is granted.

## Conclusion

RSC's Motion to Dismiss Contribution and Indemnity Claims (doc. # 88) is DENIED. RSC's Motion to Add Lexington Insurance as a Plaintiff and Strike Ratification (doc. # 91) is GRANTED. RSC's Motion for Leave to Amend (doc. # 95) is GRANTED.

IT IS SO ORDERED.


Dated this 30th day of June, 2009.


                                  _/s/ Dennis James Hubel
                                      Dennis James Hubel
                               United States Magistrate Judge