IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARCH CHEMICALS, INC.,           )
a Virginia corporation,         )
                                )    No.  07-1339-HU
                Plaintiff,      )
                                )
        v.                      )
                                )    OPINION AND ORDER
                                )
RADIATOR SPECIALTY COMPANY,     )
a North Carolina corporation,   )
                                )
                Defendant.      )
_____)

Robert E. Barton
Robert E. Sabido
Cosgrave Vergeer Kester
805 S.W. Broadway, Suite 800
Portland, Oregon 97205

Thomas D. Allen
Earl W. Gunn
Amber E. Tuggle
Mark R. Johnson
Weinberg Wheeler Hudgins Gunn & Dial
950 East Paces Ferry Road, Suite 3000
Atlanta, Georgia 30326
        Attorneys for plaintiff

William G. Earle
Paul R. Xochihua
Jonathan Henderson
Davis Rothwell Earle & Xochihua
1300 S.W. Fifth Avenue, Suite 1900

OPINION AND ORDER Page 1

Portland, Oregon 97201
    Attorneys for defendant

HUBEL, Magistrate Judge:

The matters before the court are plaintiff Arch Chemicals Inc.'s (Arch) motions for reconsideration (doc. # 177), in which Lexington Insurance Company (Lexington) joins, and for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292 (doc. # 180). Both motions are directed at the court's June 30, 2009, Opinion and Order (doc. # 166) granting defendant Radiator Specialty Company's (RSC) motion (doc. # 91) for involuntary joinder of Arch's insurer, Lexington, as a plaintiff, and striking a ratification executed by Arch and Lexington on October 1, 2007 (the ratification), and filed by Arch on February 3, 2009 (doc. # 87).

The court has granted the motion to reconsider the issues, and advised the parties that it would issue a subsequent order either amending the Opinion and Order or declining to do so. (Doc. # 198)

### Procedural History

Arch's position in the course of litigating these matters has presented something of a moving target, necessitating the following summary of the procedural history of the pending motions.

A.  RSC's motion to join Lexington as a plaintiff and strike ratification

On February 4, 2009, RSC filed a motion requesting, among other things, that Lexington be involuntarily joined as a plaintiff and that the ratification be stricken (doc. # 91). In its motion

OPINION AND ORDER Page 2

papers, RSC asserted that Lexington, as Arch's insurer, was a real party in interest and that its involuntary joinder under Rule 19 of the Federal Rules of Civil Procedure was necessary because RSC, having asserted affirmative defenses against both Arch and Lexington, could not otherwise obtain complete relief.

In its response, Arch asserted that a ratification under Rule 17(a)(3) is an alternative to joinder where an insurer is subrogated to its insured's action. Arch relied on Stouffer Corp. v. Dow Chemical Co., 88 F.R.D. 336 (E.D. Pa. 1980).

The court heard oral argument on the motions on April 6, 2009.

B.   Court's Opinion and Order of June 30, 2009

In my Opinion and Order ruling on the motions, I found that the parties had agreed Lexington was a real party in interest as defined by Oregon law. See, e.g., Metropolitan Property & Casualty v. Harper, 168 Or. App. 358, 374 (2000)(Insurer who makes an outright payment to its insured is subrogated to the insured's claims and becomes the owner of the claim and the real party in interest in any action to enforce it). My finding was based in part on positions Arch had taken in its briefs and at oral argument on April 6, 2009, see, e.g., Plaintiff's Response to Defendant's Motion to Add Lexington, 5:18-20 (Lexington a "partial subrogee"), and on Arch's failure to challenge RSC's assertion that Arch had admitted Lexington was a real party in interest. See, e.g., Hearing Transcript, Third Supplemental Declaration of John A. McHugh, Exhibit 2, 4:23-24 (RSC's assertion that "Arch has admitted that Lexington is a real party in interest," which Arch did not

OPINION AND ORDER Page 3

dispute); id. at 14:19-22 (Arch's argument that ratification was a "device that allows one real party in interest to prosecute a claim on behalf of both itself and *an absent real party in interest*. And that's exactly what we have here between Lexington and Arch.")(Emphasis added)

During oral argument, I commented, "It seems to me that ... the issue about whether Lexington should or shouldn't be joined boils down to: A. Are they a real party in interest? There doesn't seem to be a dispute on that. B. Is there something that excuses them from being [joined]? One thing might be a loan receipt. There doesn't appear to be one." Id. at 13:13-20. Arch did not respond with any indication that Lexington's status as a real party in interest was disputed.

Having found that Lexington was a real party in interest, I considered Arch's argument that pursuant to Rule 17(a)(3)[1] of the Federal Rules of Civil Procedure, the ratification[2] effectively

---

[1] Rule 17 (a)(3) provides:

The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

[2] The ratification executed by Arch and Lexington in October 2007 states:

Arch Chemicals, Inc. is authorized to prosecute this action in its own name and for its benefit as well as

OPINION AND ORDER Page 4

defeated RSC's effort to join Lexington.

I concluded that in the Ninth Circuit, the applicability of ratification pursuant to Rule 17(a)(3) is limited to cases involving an understandable mistake about the identity of the real party in interest, citing <u>Dunmore v. United States</u>, 358 F.3d 1107, 1112 (9th Cir. 2004)(ratification under Rule 17(a)(3) permitted so long as plaintiff's decision to sue in his own name represented "an understandable mistake and not a strategic decision"); <u>Goodman v. United States</u>, 298 F.3d 1048 (9th Cir. 2002)(Rule 17(a)(3) designed to avoid forfeiture and injustice when determination is difficult or when an understandable mistake was made in selecting the party in whose name the action was to be brought); <u>Spangler v. Pasadena City Bd. of Educ.</u>, 537 F.2d 1031, 1035 (9th Cir. 1976)(Rule 17(a)(3) "not applicable ... when there is no difficulty in determining the right party to bring an action and when there has been no excusable mistake made in selecting the party")(Wallace, J., dissenting on other grounds); and <u>In re Phenylpropanolamine Products Liability Litigation</u>, 2006 WL 2316722 (W.D. Wash. 2006)("The plain language of [Rule 17(a)] is broad, but courts have imputed some limitation on its application. In particular, a plaintiff must show that his decision to sue in his own name was an understandable mistake,"

for the benefit of Lexington Insurance Company to the full extent of Arch's and Lexington's payments to settle <u>Davidson et al. v. Arch Chemicals Specialty Products Inc. et al.</u>, Multnomah County Circuit Court case number 0404-04099. Lexington agrees to be bound by the final determination in this case, and not to bring any separate action in its own name and right against Radiator Specialty Company.

OPINION AND ORDER Page 5

1  citing Dunmore at 358 F.3d at 1112)(internal quotation marks
2  omitted).[3]

3      Relying on these cases, I held that because there was no
4  mistake underlying Arch's decision to sue only in its own name, nor
5  any difficulty in determining that both Arch and Lexington were
6  real parties in interest, the circumstances permitting ratification
7  under Rule 17(a)(3) were not present. Accordingly, I granted the
8  motion to join Lexington as a plaintiff and ordered the
9  ratification stricken.

10 C.  Motion for Reconsideration

11     In its opening brief on the motion for reconsideration, Arch
12 asserted that the court had incorrectly assumed that the
13 ratification was generated solely pursuant to the terms of Rule 17,
14 when in fact it was intended to be a loan receipt and/or an
15 assignment. Arch argued that the ratification's terms "effect the
16 same principles" as a loan receipt because a chose in action was

17

18     [3] Other cases in this jurisdiction limiting Rule 17(a)(3)to
   situations involving understandable mistake or difficulty
19 determining the right party include United States ex rel. Wulff
   v. CMA, Inc., 890 F.2d 1070, 1074 (9th Cir. 1989)("The purpose of
20 [Rule 17(a)(3)] is to prevent forfeiture of an action when
   determination of the right party to sue is difficult or when an
21 understandable mistake has been made."); Schneider v. Unum Life
   Ins. Co. of America, 2008 WL 1995459 (D. Or. May 6, 2008) at *3
22 ("ratification relates back to the original filing date of the
   complaint if the plaintiff's failure to seek that ratification
23 was an understandable mistake and not a strategic decision,"
   citing Dunmore, 358 F.3d at 1112 and Wulff, 890 F.2d at 1074);
24 Mun v. First Financial Ins. Co., 2006 WL 3761361 (W.D. Wash. Dec.
   20, 2006) at *3 (referring to "the significant authority that
25 explains that [Rule 17(a)(3)] 'is not applicable ... when there
   is no difficulty in determining the right party to bring an
26 action and when there has been no excusable mistake made in
   selecting the party,'" quoting Spangler, 537 F.2d at 1035).
27

28 OPINION AND ORDER Page 6

assigned to Arch, with Lexington retaining a right to receive a portion of the proceeds of the lawsuit. Arch contended further that the terms of the ratification reflected "the clear intent that Arch will be the sole party with title to the right to bring the action."

In its reply brief, Arch argued that under the terms and intent of the ratification, Lexington ceased being a real party in interest for purposes of Rules 17 and 19 when the ratification was executed, i.e., on October 1, 2007.[4] Arch contended that when properly interpreted, i.e., as a loan receipt or an assignment, the ratification "prevents Lexington from being a proper party Plaintiff." Reply Memorandum p. 3. Arch relied on Grower's Refrigeration Co., Inc. v. Pacific Elec. Contractors, Inc., 165 Or. App. 274, 276 (2000)(execution of a loan receipt agreement makes an insurer no longer a real party in interest).

Arch argued that the ratification executed in October 2007 controls the question of whether Lexington is a real party in interest:[5] "Regardless of whether it is titled Ratification,

---

[4] However, this assertion is inconsistent with the positions taken by Arch in its briefs and at oral argument on RSC's motion to join Lexington and strike the ratification, to the effect that Lexington was at that time a real party in interest and a subrogee.

[5] As Arch points out, loan receipts are effective regardless of the parties' intent in adopting the arrangement and despite evidence that the transaction was not intended from the outset to be a loan or was not consistently treated as such. Growers Refrigeration, 165 Or. App. at 277; see also Northern Ins. Co. of New York v. Conn Organ Corp., 40 Or. App. 785, 796 (1979); Furrer v. Yew Creek Logging Co., 206 Or. 382, 389 (1956).

OPINION AND ORDER Page 7

Assignment or Loan Receipt, Arch alone holds the right to bring and prosecute any and all claims against RSC which relate to or arise from the Davidson claim." Reply Memorandum, p. 5.

In addition to this argument, Arch stated in its reply memorandum that review of the oral argument transcript, the Opinion and Order, and RSC's response to the motion for reconsideration made "the apparent misunderstanding as to the purpose and/or intent of the Ratification ... all the more evident," leading Arch to the conclusion that the execution of a "separate, more detailed Loan Receipt Agreement might be the best approach toward solving this ostensible misunderstanding." Reply Memorandum, p. 6. Accordingly, Arch submitted a document titled Loan Receipt Agreement ("the agreement"), dated August 14, 2009, attached to the Declaration of Thomas D. Allen as Exhibit A.

D.    Motion for Certification

Arch requested that if the court denied its motion for reconsideration, it certify an interlocutory appeal under 28 U.S.C. § 1292(b), arguing that there is some doubt in this jurisdiction on the question of whether a ratification under Rule 17(a)(3) precludes involuntary joinder under Rule 19. Arch directs the court to Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 710, 712 (9th Cir. 1992).

**Standards**

A district court possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient. City of Los Angeles v. Santa Monica

OPINION AND ORDER Page 8

Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001). This power is derived from the common law, not from the Federal Rules of Civil Procedure. Id. at 886.

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for immediate appeal. Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken .... [A]pplication for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Section 1292(b) is a very limited exception to the final judgment rule, Caterpillar Inc. v. Lewis, 519 U.S. 61, 74 (1966), and is to be "applied sparingly and only in exceptional circumstances," United States v. Woodbury, 263 F.2d 784, 799 n. 11 (9th Cir. 1959).

A district court's decision to certify an interlocutory appeal is within the court's unfettered discretion. See Executive Software N. America, Inc. v. U.S. District Court for the Central Dist. of Cal., 24 F.3d 1545, 1550 (9th Cir. 1994)(district court's certification decision "unreviewable.")

**Discussion**

A.   Should the court alter or amend its decision that the applicability of a ratification under Rule 17(a)(3) is limited to situations involving mistake or uncertainty about the identity of a real party in interest?

Rule 17(a)(3) provides a remedy for lack of prudential

OPINION AND ORDER Page 9

standing, i.e., the requirement that a plaintiff assert his or her own legal interests as a real party in interest. <u>Dunmore</u>, 358 F.3d at 1112; see also <u>Schneider</u>, 2008 WL 1995459 at *3; <u>U-Haul Int'l Inc. v. Jartran, Inc.</u>, 793 F.2d 1034, 1038 (9th Cir. 1986)(Rule 17(a) "allows a federal court to entertain a suit at the instance of any party to whom the relevant substantive law grants a cause of action").

The language of Rule 17(a)(3) conditions its application to a situation in which an objection or a motion to dismiss has been made on the ground that the action is not prosecuted in the name of the real party in interest. In that situation, the court is directed to allow a reasonable time for one of three actions: 1) ratification by the real party in interest; 2) joinder of the real party in interest; or 3) substitution of the real party in interest. If one of those three actions occurs, the lawsuit is deemed to have been commenced in the name of the real party in interest.

In this case, the threshold requirement of Rule 17(a)(3) that there be an objection or motion to dismiss on the ground that the action is not being prosecuted in the name of the real party in interest is not present. Instead, this case presents the issue of whether Rule 17(a)(3) applies when there are two real parties in interest and one of them is not named as a party and wants to keep it that way.

The text of Rule 17(a)(3) is silent with respect to whether ratification of an action brought by a real party in interest by a second real party in interest can be used to defeat joinder of the

OPINION AND ORDER Page 10

absent party. The Ninth Circuit has indicated that Rule 17(a)(3) is not applicable to questions of whether real parties in interest must be joined. U-Haul, 793 F.2d at 1038(Rule 17 "governs only the right of [plaintiff] to bring ... suit. It is [Rule 19] that tells us whether the appropriate parties are before the court.")

In any event, it is well established in this jurisdiction that the purpose of Rule 17(a)(3) is to prevent forfeiture of an action when determination of the real party in interest is difficult or when an understandable mistake has ben made. See, e.g., Klamath-Lake Pharm. Ass'n v. Klamath Med. Services Bureau, 701 F.2d 1276, 1282 n. 4 (9th Cir. 1983)(purpose of Rule 17(a) is to ensure that lawsuits are brought in the name of the party possessing the substantive right at issue, and to protect the defendant against subsequent action by the party actually entitled to recover, ensuring generally that the judgment will have its proper effect as res judicata); U-Haul, 793 F.2d at 1039 ("The ... function of the rule ... is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata," quoting Note of Advisory Committee on 1966 Amendment to Fed. R. Civ. P. 17);[6] Wulff v. CMA, Inc., 890 F.2d at 1074 ("Rule

_____

[6] The relevant portion of the Advisory Committee's Note states:

> The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc. is added simply in the interests of justice. In its origin the rule concerning the real party in

17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake); <u>Goodman</u>, 298 F.3d at 1053 (Rule 17(a) designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting party in whose name action should be brought); <u>Dunmore</u> 358 F.3d at 1112 (Rule 17(a) enables party lacking prudential standing to avoid being dismissed for failure to be real party in interest); <u>Schneider</u> at *3 [plaintiff's lack of prudential standing can be

interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.

... Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed ....(citations omitted). The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person) as personal representative of Richard Roe (another fictitious person) in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period. It is, in cases of this sort, intended to insure against forfeiture and injustice-in short, to codify in broad terms the salutary principle of <u>Levinson v. Deupree</u>, 345 U.S. 648 (1953) and <u>Link Aviation, Inc. v. Downs</u>, 325 F.2d 613 (D.C. Cir. 1963).

OPINION AND ORDER Page 12

remedied under Rule 17(a)].

There is also authority in this jurisdiction that Rule 17(a)(3) does *not* apply when there has been no difficulty in determining the right party to bring an action and when there has been no excusable mistake made in selecting the party. Spangler, 537 F.2d at 1035 (Rule 17(a)(3) not applicable "when there is no difficulty in determining the right party to bring an action and when there has been no excusable mistake made in selecting a party"); Wulff, 890 F.2d at 1075 (Rule 17(a) not applicable when plaintiffs aware that another entity was real party in interest); Dunmore, 358 F.3d at 1112 (ratification under Rule 17(a) would have same effect as if real party in interest had originally commenced the action "so long as [plaintiff's] decision to sue in his own name represented an understandable mistake and not a strategic decision"); Mun v. First Financial Ins. Co., 2006 WL 3761361 (W.D. Wash. December 20, 2006) at *3 (quoting Spangler)

Arch argues that ratification is an alternative to joinder, so that joinder can be circumvented through a ratification by a real party in interest in favor of another real party in interest. Arch relies on Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 712 (9th Cir. 1992), in which plaintiff was a liability insurer bringing a legal malpractice action on its own behalf against the law firm that had represented its insured in a personal injury action. The gravamen of the action was that the law firm had been negligent in failing to enable Mutuelles to settle the case for $1 million, subjecting Mutuelles to a verdict of almost $4 million and a final settlement of over $3 million.

OPINION AND ORDER Page 13

Before trial, the district court ruled that another insurer, Suisse Re, was a real party in interest because it had paid some of the settlement. The court ordered Mutuelles to either join Suisse Re or obtain a ratification from Suisse Re pursuant to Rule 17(a). Suisse Re filed a ratification. On appeal, the law firm asserted that the district court erred when it permitted Suisse Re to file the ratification, arguing that the ratification was improperly used to defeat the statute of limitations. 957 F.2d at 712. The court rejected the argument, quoting the Advisory Committee Note to the 1966 Amendments to Rule 17(a) and holding that "it is uncontested that ... Suisse Re ... [has] made [a] proper ratification[]" and that Mutuelles had brought the action on its own behalf and was a real party in interest because it supervised the personal injury lawsuit and ultimately settled the claim. The court concluded that <u>Wulff</u> was distinguishable on its facts.[7]

<u>Mutuelles</u> involved more than one real party in interest and an order from the court ordering the absent party to either join or file a ratification under Rule 17(a)(3), but the case does not discuss the question of mistake. I am not persuaded that <u>Mutuelles</u>, which was decided in 1992, 12 years before <u>Dunmore</u> and 14 years before <u>Mun</u>, stands for the proposition that a ratification can, in

---

[7] In <u>Wulff</u>, the court held:

Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit to toll the statute of limitations and later obtains a cause of action through assignment. Rule 17(a) ... is not a provision to be distorted by parties to circumvent the limitations period.

890 F.2d at 1075.

OPINION AND ORDER Page 14

a case brought by a real party in interest, defeat the joinder of a second real party in interest, especially where the omission of the second real party in interest was not a mistake but an intentional omission to avoid perceived biases against insurers. Arch has not cited, and the court has not found, any Ninth Circuit authority for that proposition. Consequently, my decision to strike the ratification is controlled by <u>Dunmore</u> and <u>Mun</u>, and I adhere to that decision upon reconsideration.

B.    <u>Should the ratification be construed as a loan receipt or an assignment, under which Lexington is not a real party in interest?</u>

An insurer that makes an outright payment to its insured is subrogated to the insured's claims arising from the loss for which payment was made. <u>Metropolitan Property & Casualty v. Harper</u>, 168 Or. App. 358, (2000), citing <u>Furrer v. Yew Creek Logging Co.</u>, 206 Or. 382, 388 (1956) and <u>Growers Refrigeration v. Pacific Electrical</u>, 165 Or. App. 274, 276 (2000). A subrogated insurer becomes the owner of the claim and the real party in interest in any action to enforce it. <u>Id.</u>

An insurer that makes payments to its insured and receives a loan receipt in return does not become subrogated to its insured's claims, and is therefore not a real party in interest, because there has been no outright payment that effectively transfers title to the claim from the insured to the insurer. <u>Furrer</u>, 206 Or. at 388; <u>Growers Refrigeration</u>, 165 Or. App. at 276; <u>Metropolitan Property</u>, 168 Or. App. at 375.

A valid loan receipt documents the parties' intent to authorize an insurer to proceed with an action against third

OPINION AND ORDER Page 15

parties in the name of the insured where, in fact, the claim still belongs to the insured. Waterway Terminals v. P.S. Lord, 242 Or. 1, 7 (1965); Metropolitan Property, 168 Or. App. at 375.

The intention of the parties controls the validity of the loan receipt. Condor Inv. Co. v. Pacific Coca-Cola Bottling Co., 211 F. Supp. 671, 675 (D. Or. 1962). To determine the intention of the parties, the court looks to the practical interpretation of the document by the parties themselves. Id. [8]

As a preliminary matter, RSC argues that Arch is judicially estopped from now asserting that Lexington is not a real party in interest, and that the court made a mistake in its Opinion and Order.

Judicial estoppel is an equitable doctrine invoked by a court at its discretion. Rissetto v. Plumbers and Steamfitters Local 343 94 F.3d 597, 601 (9th Cir. 1996)(attached). It applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion. Helfand v.

---

[8] This rule exists in tension with the Oregon Supreme Court's holding in 1965 that a loan receipt executed after the insurer has previously issued to the insured drafts purporting on their face to be in full payment of the loss is valid. Waterway Terminals v. P.S. Lord, 242 Or. 1, 8 (1965). Consequently, the existence of evidence that the transaction was not intended from the outset to be a loan or was not consistently treated as such is not conclusive. Northern Ins. Co. v. Conn Organ, 40 Or. App. 785, 796-97 (1979)("Once the Supreme Court was persuaded to accept the *form* of a loan receipt as being the *substance* of the transaction, it had entered upon a course of logic that led inevitably to the Waterway Terminals decision.")(emphasis in original). See also Growers Refrigeration, 165 Or. App. at 277 (noting that in Northern Insurance, the court followed Waterway Terminals even though the trial court had found that "the parties' intention was contrary to that expressed in the loan receipts." 165 Or. App. at n. 1.

OPINION AND ORDER Page 16

Gerson, 105 F.3d 530 (9th Cir. 1997).

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." State of New Hampshire v. State of Maine, 532 U.S. 742, 749 (2001), quoting Davis v. Wakelee, 156 U.S. 680, 680 (1895)(attached). The circumstances under which judicial estoppel may appropriately be invoked are "probably not reducible to any general formulation of principle." Id. at 750 (internal citations and quotations omitted). Several factors that typically inform the decision whether to apply the doctrine include 1) whether a party's later position must be "clearly inconsistent" with its earlier position; 2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled;" and 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 750-51 (internal citations and quotations omitted). When these factors "firmly tip the balance of equities" against the party taking the inconsistent positions, that party is estopped from doing so. Id. at 751.

Examining Arch's conduct in light of these enumerated factors, I conclude that judicial estoppel does not apply, primarily because although the court relied upon Arch's apparent acquiescence in the

OPINION AND ORDER Page 17

characterization of Lexington as a real party in interest, Arch did not succeed in persuading the court to deny RSC's motion to join Lexington and strike the ratification. Arch's argument now is more akin to arguing in the alternative than it is to seeking some unfair advantage after successfully having a court adopt its previous position.

The ratification on its face contains no language suggesting that Lexington and Arch intended to treat the ratification as a loan receipt for a loan repayable to the extent that Arch obtained a judgment against RSC. Indeed, the language does not suggest that the concept of a loan receipt had crossed anyone's mind at that time. See Metropolitan Property 168 Or. App. at 375 (document containing no language suggesting that the parties intended a loan repayable only to the extent that the insured obtained a judgment was not a valid loan receipt).

The ratification does not authorize Lexington to proceed with an action against RSC in Arch's name. In fact, it authorizes Arch to prosecute the action in its own name. See Metropolitan Property, 168 Or. App. at 552; Waterway Terminals, 242 Or. at 7 (valid loan receipt authorizes insurer to proceed with action in name of insured where in fact the claim still belongs to the insured). The ratification does not reserve ownership of the claim to Arch. See Metropolitan Property, 168 Or. App. at 375-76 (document that did not reserve ownership of the claim to the insured not a valid loan receipt). The ratification suggests that the claim belongs to both Arch and Lexington (Arch is authorized to prosecute the action "for its benefit as well as for the benefit of Lexington Insurance" and

OPINION AND ORDER Page 18

to "the full extent of Arch's and Lexington's payments to settle [the Davidson case].")

Arch asserts that the ratification is also an assignment of rights, or a transfer of a chose in action which could be deemed "effectual as an assignment." The argument is unpersuasive because there is nothing in the language of the ratification to suggest that Lexington has transferred any right, title or interest acquired by subrogation to Arch. The ratification authorizes Arch to sue RSC "for its benefit as well as for the benefit" of Lexington. Nor can the ratification reasonably be interpreted as a transfer of a chose in action to Arch. Nothing in the ratification indicates that Lexington has divested itself of title to its subrogation right or that Arch has acquired exclusive ownership of claims against RSC.

C.  Does the August 2009 loan receipt agreement prevent joinder of Lexington as a real party in interest?

The agreement filed in August 2009 states that

[t]he validity, terms and effect of this "loan receipt" are as "loan receipts" are interpreted and treated in the following cases: Furrer v. Yew Creek Logging Co., 206 Or. 382 (1956); Northern Ins. Co. of N.Y. v. Conn Organ Corp., 40 Or. App. 785 (1979) and Growers Refrigeration Co., Inc. v. Pacific Electrical Contractors, Inc., 165 Or. App. 274 (2000). This "loan receipt" shall not be used for any other purpose.

Declaration of Thomas D. Allen, Exhibit A, p. 2.

In other sections of the agreement, Arch acknowledges Lexington's payment to settle the Davidson claim and agrees that the amount shall be repayable to Lexington by Arch if and to the extent that Arch recovers from RSC and/or its liability insurer. Id. Lexington acknowledges that its right to repayment from Arch of

OPINION AND ORDER Page 19

the amount paid in settlement of the Davidson claim is dependent upon and limited to Arch's actual recovery and receipt of sums from RSC and/or its insurer.

The agreement also states that Lexington assigns to Arch its subrogation rights in any claim seeking recovery from RSC for amounts paid to settle the Davidson claim, and agrees that title to any claim against RSC shall belong solely to Arch. This provision raises the question of whether Arch could have any subrogation rights, having executed a loan receipt in the same document. See Northern Insurance, 40 Or. App. at 794 ("The insurer cannot make a loan and claim to be subrogated.") Having a subrogation interest to assign contradicts the assertion that Lexington's payment to the Davidsons was a loan, indicating that even as late as August 2009, Lexington and Arch did not and never had considered Lexington's payment to settle the Davidson claims a "loan."

The agreement recites that Arch accepts the assignment and agrees to prosecute the claim against RSC solely in its own name, but "by and on behalf of and for the benefit of itself and Lexington," against RSC, and at Lexington's expense. Id. at 2-3. Lexington acknowledges that under the terms of the agreement, its recourse for recovery or repayment of any portion of the amount paid in settlement of the Davidson claim "shall be solely against Arch, and limited to the extent of any sums which may be actually recovered and received by Arch from RSC and/or its insurer, outside of the amount of the deductible paid by Arch." Lexington further acknowledges that pursuant to the agreement, it will be bound by the resolution of the action brought by Arch against RSC such that

OPINION AND ORDER Page 20

resolution of this action shall be res judicata as to any claims Lexington holds against RSC in relation to the settlement of the Davidson claim. Id. at 3. Lexington retains an equitable lien on the proceeds thereof actually received by Arch. Id.

The agreement recites that it is the intent of Lexington and Arch that the terms and effect of the agreement "shall result in the action against [RSC] being brought solely in the name of Arch, thereby shielding and/or insulating Lexington from the prejudice which juries frequently apply against insurance companies." Id. This indicates a purely strategic purpose to the August 2009 agreement, and strongly suggests the same motivation for the 2007 ratification.

Nowhere in the document is the word "loan" used, nor is there any language in the agreement suggesting an intention that the money received by the Davidsons from Lexington was to be treated as a loan. Compare Furrer, 206 Or. at 389-90 (Where "the loan receipt is given with the intention that the money received under it shall be a loan and not a payment, such an intention should be given effect. And it would seem that the giving of the receipt, containing recitals such as the one here involved,[9] is strong evidence of the true intention of the parties...")

_____

[9] In both Furrer and Northern Insurance, 40 Or. App. at 787 n. 2, the loan receipts recited that a sum of money had been received from the insurer "as a loan," and "repayable only in the event and to the extent of any net recovery the undersigned may make..." In Waterway Terminals, the court held, "[W]e think that the language of the loan receipts clearly expressing the intention of the plaintiff and insurance companies to treat the payments as loans is controlling." 242 Or. at 8.

OPINION AND ORDER Page 21

As the Oregon Court of Appeals noted in <u>Growers Refrigeration</u>, the *form* of the loan receipt is the *substance* of the transaction. 165 Or. App. at 522-23 (emphasis in original). In this case, the agreement contains no language expressing the intention of Arch and Lexington to treat the money paid by Lexington in settlement of the Davidsons' claims as a loan. Moreover, the agreement contains provisions assigning Lexington's subrogation rights to Arch, rights which would not exist if there had been a loan. On the basis of the entire record, I conclude that the August 2009 agreement is not a loan receipt and therefore that Lexington remains a real party in interest.

D.    <u>Is joinder necessary for complete relief?</u>

When the motion to join Lexington as an involuntary plaintiff was litigated, RSC asserted that joinder was necessary because otherwise, RSC would be deprived of the ability to prove up equitable defenses that were specific to Lexington. In February 2009, RSC sought to amend its Answer to assert three such defenses--Laches, Unclean Hands, and Lack of Superior Equities. In April 2009, RSC withdrew these three affirmative defenses against Lexington (doc. # 141), and the court's June 30, 2009 order allowed the filing of an amended Answer and Affirmative Defenses asserting two new affirmative defenses against Arch (Failure to Apportion Punitive and Compensatory Damages and Willful and Wanton Misconduct) and an affirmative defense against Lexington, Defenses Barring Potential Subrogee Insurer. Affirmative defenses asserted against both Arch and Lexington were Failure to State a Claim, Preemption, Statute of Limitations/Repose, Comparative Fault,

OPINION AND ORDER Page 22

Failure to State a Claim, and Preemption.

The affirmative defense asserted solely against Lexington alleges:

> To the extent that [Lexington], by virtue of its funding of the settlement with the Davidson family, is a partial subrogee insurer, and thus stands in the shoes of [Arch] for recovery purposes, [Lexington's] alleged right to subrogation, or otherwise, is subject to the same defenses applicable to Plaintiff Arch.

Arch asserts that through its withdrawal of any defense specific to Lexington, RSC has disclaimed any defenses based on Lexington's conduct, so that joinder is now unnecessary.

In considering this argument, I have concluded that the Opinion and Order of June 30, 2009, did not fully explain my reasoning on whether RSC's affirmative defenses, in their present posture, qualify Lexington as a party needed for just adjudication.

Rule 19(a)(1) provides:

> (1)   Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (I) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

OPINION AND ORDER Page 23

If my analysis of Rule 17(a) in the June 30, 2009 Opinion and Order and this Opinion and Order are correct and the ratification was properly stricken, then without joinder, RSC would be exposed to the risk of incurring multiple obligations to Arch and Lexington. Furthermore, without the ratification, the applicability of RSC's statute of limitations defense to Lexington may be different from its applicability to Arch, because the filing date for claims made by Lexington may not relate back to the filing date for claims asserted by Arch. I therefore concluded, and continue to believe, that the compulsory joinder of Lexington was and is proper under Rule 19(a)(1).

F.   <u>Are the conditions for certification of an interlocutory appeal met?</u>

The three requirements for certification of an interlocutory appeal are 1) a controlling question of law 2) for which there is substantial ground for difference of opinion, and 3) immediate appeal may materially advance the ultimate termination of the litigation. I am persuaded that the exercise of my discretion to certify an interlocutory appeal is appropriate here. First, the question of whether the ratification was properly stricken is a controlling question of law that affects the propriety of Lexington's compulsory joinder and RSC's statute of limitations defenses. Second, because the <u>Mutuelles</u> case suggests a potential conflict in panel decisions within the Ninth Circuit, there may be substantial ground for difference of opinion on whether Rule 17(a) applies only in situations involving a mistake as to the identity of a real party in interest. And third, resolution of the problem

OPINION AND ORDER Page 24

of whether the ratification is valid advances termination of the litigation by clarifying whether RSC is exposed to multiple obligations and how its statute of limitations defenses should be determined.

G.    <u>Should the court revisit the issues of prejudice and curative jury instructions?</u>

Arch asserts that the court's order unnecessarily prejudices Arch and Lexington and erroneously concluded that curative instructions would be sufficient to cure that prejudice. Arch made these arguments in the first round of briefing and argument. I adhere to the conclusions in the Opinion and Order.

**Conclusion**

Upon reconsideration, I adhere to the Opinion and Order entered June 30, 2009, and decline to amend it. However, Arch's motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292 (doc. # 180) is GRANTED.

IT IS SO ORDERED.


Dated this <u>25th</u> day of <u>September</u>, 2009.


/s/ Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge

OPINION AND ORDER Page 25