IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ARCH CHEMICALS, INC.,**
a Virginia corporation, and
**LEXINGTON INSURANCE CO.,**

                            No. 07-1339-HU

           Plaintiffs

   v.

                           OPINION AND ORDER

**RADIATOR SPECIALTY COMPANY,**
a North Carolina corporation,

           Defendant.

M. Robert Smith
Joseph Rohner IV
Dennis N. Freed
Ryan J. McClellan
Smith Freed & Eberhard
111 S.W. Third Avenue, Suite 4300
Portland, Oregon 97204

Thomas D. Allen
Amber E. Tuggle
Shawn D. Scott
Earl W. Gunn
Mark R. Johnson
Laura Voght
Weinberg, Wheeler, Hudgins, Gunn & Dial

OPINION AND ORDER Page 1

50 East Paces Ferry Road, Suite 3000
Atlanta, Georgia 30326
        Attorneys for plaintiffs

William G. Earle
Paul R. Xochihua
Jonathan Henderson
Davis Rothwell Earle & Xochihua
1300 S.W. Fifth Avenue, Suite 1900
Portland, Oregon 97201

Daniel F. Mullin
John A. McHugh
Mullin Law Group
101 Yesler Way, Suite 400
Seattle, Washington 98104
        Attorneys for defendant


HUBEL, Magistrate Judge:

        This is a renewed motion by defendant Radiator Specialty
Company (RSC) for partial summary judgment on plaintiffs' failure
to warn claim. At the time of the earlier motion, the court held
that a ruling on the issue of whether the label on EB-1 violated
the Federal Hazardous Substances Act (FHSA), 15 U.S.C. §§ 1261-
1278, was premature, because there had as yet been no discovery
(doc. # 55).

### Statutory Background

        The FHSA requires warnings on labels for substances deemed
hazardous. 15 U.S.C. § 1261. The terms "extremely flammable,"
"flammable," and "combustible," as applied to any substance,
liquid, solid, or in a self-pressurized container, are defined by
regulation. 15 U.S.C. § 1261*(l)*(1). A manufacturer violates the
FHSA if it "introduces into interstate commerce ... any misbranded
hazardous substance." 15 U.S.C. § 1263(a). A hazardous substance is
"misbranded" if its packaging is "in violation of" a regulation

OPINION AND ORDER Page 2

issued under the FHSA or if

> such substance ... fails to bear a label--(1) which
> states conspicuously ... (E) an affirmative statement of
> the principal hazard or hazards, such as 'Flammable,'
> 'Combustible,' 'Vapor Harmful,' ... or similar wording
> descriptive of the hazard [and] (F) precautionary
> measures describing the action to be followed or avoided.
> ...

15 U.S.C. §§ 1261(p)(1)(E) and (F); 16 C.F.R. § 1500.127 (labels of products with multiple hazards must contain "an affirmative statement of each such hazard" and the "precautionary measures describing the action to be followed or avoided for each such hazard.")

The Consumer Product Safety Act (CPSA), 15 U.S.C. § 2079(a) authorized creation of the Consumer Product Safety Commission (CPSC). 15 U.S.C. § 2051-81. Among the CPSC's responsibilities is interpretation and enforcement of the FHSA. The CPSC also monitors potential hazards and patterns of defects associated with consumer products, 15 U.S.C. § 1262, and promulgates new regulations to address such additional potential hazards.

### Pertinent Background Facts

RSC's product, Engine-Brite (EB-1) is packaged in a self-pressurized container and is "flammable" under the definition and/or requirements of 16 C.F.R. §§ 1500.3(c)(6)(vii) and (viii). Declaration of Larry Beaver ¶ 10. This designation is the result of a flame extension test outlined in 16 C.F.R. § 1500.45, which describes the methods used to determine the flammability rating for the contents of self-pressurized containers. Declaration of Robert Moro ¶ 8. The warning "FLAMMABLE" appears on the EB-1 label, along

OPINION AND ORDER Page 3

with particular instructions for handling and storage. Beaver Declaration Exhibit A (EB-1 label). Because EB-1 contains 10% or more by weight of petroleum distillates, by regulation, its label must also contain the words "DANGER," "HARMFUL OR FATAL IF SWALLOWED," and "VAPOR HARMFUL." 16 C.F.R. § 1500.14(b)(3)(ii). EB-1 bears those warnings. Id.

The labels on the EB-1 aerosol cans that were in the Davidson car on the day of the accident in 2002 contained the following language on the front display panel:

> **DANGER:** HARMFUL OR FATAL IF SWALLOWED. EYE AND SKIN IRRITANT. VAPOR HARMFUL. FLAMMABLE. CONTENTS UNDER PRESSURE. READ PRECAUTIONS ON BACK PANEL."

Beaver Declaration, Exhibit A. The back panel on the EB-1 aerosol cans in the Davidson vehicle contained the following language:

> PRECAUTIONS: Contains petroleum distillates. (CAS #68456-34-6). Use in well-ventilated area. SEE STORAGE & HANDLING BELOW FOR IMPORTANT SAFETY INFORMATION.
> * * *
> STORAGE & HANDLING: Store in cool, dry area. Do not puncture or incinerate container or store above 120 F. Do not expose contents or put container in contact with heat, sparks, open flame or electrical connections or contacts.

Id. Arch's product, Sock It, is a strong oxidizer, and can create hazardous conditions when it comes in contact with other products. The Sock It box contains the following warning:

> CHEMICAL HAZARDS: DANGER. Strong oxidizing agent. Add only into water. Contamination may start a chemical reaction. This reaction can give off heat, hazardous gases, and may cause a fire or explosion. DO NOT touch this chemical with a flame or burning material (like a lighted cigarette).
>
> Keep all of these away from this product: moisture, garbage, dirt, chemicals including other pool chemicals, pool chlorinating compounds, household products, cyanuric

OPINION AND ORDER Page 4

1
2
acid pool stabilizers, soap products, paint products,
solvents, acids, vinegar, beverages, oils, pine oil,
dirty rags, or any other foreign matter.

3   Vierra Declaration, Exhibit B.

4        RSC has proffered a declaration from Loran Davidson saying

5   that 1) he used EB-1 for 30 years, and knew EB-1 was a petroleum

6   product and was flammable; 2) he did not know a box of Sock It was

7   in the cargo area of the car the day of the accident or that Sock

8   It was a strong oxidizing household chemical; and 3) if he had read

9   additional warnings or a reference to flash fires on the EB-1

10  label, or a warning that the cap could come off, or a warning

11  relating to strong oxidizing household chemicals, or a reference to

12  "diesel fuel" instead of "petroleum distillate," he still would

13  have purchased it the day of the accident.

14       Plaintiffs have offered evidence of other statements by Mr.

15  Davidson, to the Oregon State Police and to medical providers

16  indicating that Mr. Davidson did know that Sock It was in the cargo

17  area of the car. Declaration of Thomas Allen, Exhibits 1, 2, 3, 8.

18                    **Plaintiffs' Failure to Warn Claim**

19       The parties are in substantial agreement about what

20  plaintiffs' failure to warn theories are. RSC characterizes them

21  as: 1) the Federal Hazardous Substances Act (FHSA) requires that

22  the principal display panel on the EB-1 can include the warning

23  VAPORS OR MISTS MAY CAUSE FLASH FIRES, because this is a "principal

24  hazard" under the FHSA; 2) the FHSA requires that the back label

25  include two additional warnings under the Storage and Handling

26  section: keeping the product away from strong oxidizing household

27

28  OPINION AND ORDER Page 5

1  chemicals, including swimming pool chemicals, and storing the
2  product in an upright position, keeping the cap attached to the can
3  to prevent accidental discharge; 3) the FHSA requires that the
4  label refer to the "common or usual name" of the contents, i.e.,
5  diesel fuel, rather than "petroleum distillates;" and 4) RSC failed
6  to comply with the FHSA requirement that the "accompanying
7  literature" to the product also include all of the warnings
8  required to be on the label, because the product information sheets
9  (PIS) about EB-1 available on RSC's website do not contain that
10 information.[1] See Report of Plaintiffs' Expert William Kitzes,
11 Plaintiffs' Response Memorandum, Exhibit B.

## Issues Presented

12

13 A threshold issue is whether determination of a product's
14 compliance with the FHSA's labeling requirements is a question of
15 law or fact. My conclusion is that it can be either one, depending
16 on the facts of the case. In this case, based on its facts and the
17 legal authority discussed below, I believe the determination
18 requires resolving an issue of fact.

19 The primary legal issue is whether, as RSC contends, the FHSA
20 only requires RSC to label EB-1 in accordance with the signal word
21 FLAMMABLE and the associated warning specified in the regulations,
22 or whether, as plaintiffs contend, RSC had a duty to provide

23 _____

24 [1] RSC's motion described a fifth claim, that the Consumer
   Product Safety Act required RSC to notify the Consumer Product
25 Safety Commission (CPSC) of any substantial hazard, but if there
   was such a claim, plaintiffs have dropped it because, as RSC
26 pointed out in its opening brief, there is no private cause of
   action for such a claim. In re All Terrain Vehicle Litigation,
27 979 F.2d 755 (9th Cir. 1992).

28 OPINION AND ORDER Page 6

additional warnings about hazards known to RSC but not encompassed

within the FLAMMABLE warning. RSC's position is that it complied

with the warnings mandated by the regulations and therefore has not

mislabeled its product. In its Concise Statement of Fact (CSF), RSC

states:

> The CPSC construes the FHSA and its regulations *to prohibit* any additional principal hazards not found in the regulations from being displayed on consumer labels under its purview, since that information would be considered over-warning, which the CPSC considers a violation of the FHSA.

(Emphasis added). RSC has cited no legal authority for this

statement; it relies entirely on the Declaration of Robert Moro,

RSC's expert witness. See RSC's CSF ¶ 5; Moro Declaration ¶ 13.[2]

Statutory construction is a pure question of law and therefore a

matter for the court. See, e.g., United States v. McConney, 728

F.2d 1195, 1201 (9th Cir.1984) (*en banc).* Consequently, Mr. Moro's

opinion has no evidentiary weight.

RSC also moves for summary judgment on the causation element,

arguing that the Davidsons' injuries and deaths would not have been

prevented even if the warnings suggested by plaintiffs had been on

the cans.

Plaintiffs assert that besides flammability, EB-1 presents an

additional principal hazard, which is that when EB-1 is released in

---

[2] The Moro Declaration says:
The FHSA and its regulations prohibit any additional principal hazards not found in the regulations from being displayed on the EB-1 label, since that information would be considered over-warning consumers and would negate or disclaim any of the required label statements and be a violation of the FHSA.

OPINION AND ORDER Page 7

an atomized spray, or mist, it can be ignited by a spark. They argue that RSC's failure to include a "flash fire" warning about this principal hazard constitutes mislabeling the product.[3] As factual support for this argument, plaintiffs assert that RSC provided a "flash fire" warning on an earlier version of EB-1; on the exact EB-1 formula when sold in different quantities; on EB-1 as sold in Canada, under the trade name "Dunk Degreaser;" on bulk containers of similar products, EB-5 and EB-8; on its Super Concentrate Degreaser (SC-7)[4]; and on its products "Wire Dryer," "Liquid Wrench," and "Cycle Chain Lube." Pltfs CSF, ¶¶ 3, 4, 5, 15, 16. RSC does not deny these factual contentions. RSC's Resp to Pltfs CSF ¶ 4.

## Standard

A party is entitled to summary judgment if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[3] RSC asserts in its response to plaintiffs' CSF that plaintiffs have not contended that there was a flame in the Davidsons' car that ignited the fire, or that EB-1, as released from its container, can be ignited by a spark of any kind. RSC characterizes the "mist" plaintiffs' experts refer to as the "mist" created when the pencil stream sprayed from a can of EB-1 hits a hard surface. RSC argues it is this hypothesized "mist" from a hypothesized "splash-back" that plaintiffs contend was ignited by a static electric spark in the Davidsons' car.

[4] However, according to the Second Supplemental Report of Robert Moro, the SC-7 and EB-8 products do not meet the definition of a"consumer product" because of their size, weight, etc., and therefore cannot meet the definition of a "hazardous substance" as defined in the FHSA. He states that they are industrial and commercial products that fall within the federal statutes and regulations enforced by the Occupational Safety and Hazard Administration (OSHA). Id. at p. 3.

OPINION AND ORDER Page 8

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(3). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." State of California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir. 2001). The court may not make credibility determinations or weigh the evidence. Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-55 (1990). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Ins. Co. of N. Am., 638 F.2d 136, 140 (9th Cir. 1981).

**Discussion**

1. <u>Does the FHSA prohibit manufacturers from including warnings other than those mandated by statute or regulation?</u>

The FHSA provides that a hazardous substance is "misbranded" if its packaging or labeling "is in violation of an applicable regulation" issued under the Act, "**or** if such substance ... fails to bear a label–1) which states conspicuously ... (E) an affirmative

OPINION AND ORDER Page 9

statement of **the principal hazard or hazards,** such as 'Flammable,' 'Combustile,' 'Vapor Harmful' ... or similar wording descriptive of the hazard. ..." 15 U.S.C. §§ 1261(p)(1)(E) and (F). (Emphasis added). The regulations require labels of products with multiple hazards to contain "[a]n affirmative statement of **each** such hazard; [and] the precautionary measures describing the action to be followed or avoided for **each** such hazard." (Emphasis added).

I find nothing in the language of the statute or the regulation to support RSC's contention that the FHSA and its regulations prohibit any additional principal hazards not found in the regulations from being displayed on consumer labels. RSC has not directed the court to any such language and has not cited the court to any legal authority that supports its contention. The statute and the regulation clearly contemplate the possibility of more than one principal hazard. I disagree with RSC's assertion that, as a matter of law, RSC's compliance with the required language for a product whose principal hazard is flammability necessarily requires the conclusion that EB-1 has no other principal hazard and therefore was not required to carry any additional warnings.

2.  <u>Is compliance with FHSA labeling requirements an issue of fact or a matter of law?</u>

RSC asserts that the question of whether a label complies with the requirements of the FHSA is a question of law, to be resolved by the court, citing <u>Pennsylvania Gen. Ins. Co. v. Landis</u>, 96 F. Supp.2d 408, 412 (D.N.J. 2000)(question of whether label complies with the requirements of FHSA a question of law) and <u>Mause v. Global Household Brands</u>, 2003 WL 22416000 at *4 (E.D. Pa. Oct. 20,

OPINION AND ORDER Page 10

2003)("It is for the Court, and not an expert, to decide whether the [FHSA] is violated.")

Plaintiffs counter with <u>Milanese v. Rust-Oleum Corp.</u>, 244 F.3d 104 (2d Cir. 2001)(finding a material issue of fact as to whether the danger of flash fire caused by vapors was a primary hazard separate and distinct from flammability of the liquid product).

The cases cited by RSC are readily distinguishable from this case; <u>Milanese</u> is on point. In <u>Landis</u>, the court held, as a matter of law, that a lacquer thinner label which said: "EXTREMELY FLAMMABLE LIQUID AND VAPOR ... Vapors may ignite explosively. VAPORS MAY CAUSE FLASH FIRE ... Turn off and extinguish all flames and pilot lights on stoves, heaters, water heaters, etc. Disconnect all electric motors and other sources of ignition during use and until all vapors are gone," warned of vapor flash fire as a principal hazard apart from the flammability of the liquid product.

The <u>Mause</u> case dealt with the issue of whether a human factors psychologist could offer an opinion that a label violated the FHSA. The court held that the expert was not qualified to give an opinion on whether the product was misbranded under the FHSA, citing <u>Milanese</u>, in which the court had excluded the same expert for the same reason. It was this situation that prompted the court to say that it was "for the Court, and not an expert," to "decide whether the law is violated."

In <u>Milanese</u>, the court concluded that because plaintiff had produced an expert who testified about a specific risk of vapor flash fire associated with a can of primer, the possibility of an additional primary hazard associated with vapor flash fires created

OPINION AND ORDER Page 11

a genuine issue of material fact, precluding the court from concluding as a matter of law that the presence of a warning that the liquid was flammable, while the vapor was "harmful," was sufficient to comply with the requirements of the FHSA.

Plaintiffs argue that they have generated an issue of material fact about whether an atomized release of EB-1 creates a hazard separate and distinct from the flammability hazard posed by the liquid product. They rely on testing done by experts James Kittrell and Paul Singh, (see Kittrell deposition, Pltfs Response, Exhibit 4 passim, and Singh deposition, Pltfs Response, Exhibit 5 passim); the evidence cited above that RSC has put such warnings on the same or similar products; and the report of their expert, William Kitzes, who opines that the can of EB-1 should have displayed a warning that "VAPORS OR MIST CAN CAUSE FLASH FIRE." Plaintiffs' Response, Exhibit 2.

Plaintiffs' evidence aligns this case with Milanese. Accordingly, I conclude that the question of whether RSC complied with the requirements of the FHSA is an issue of fact on this record.

3.    "Vapors or Mist May Cause Flash Fires"

RSC asserts that this warning is based on testing plaintiffs' experts performed for this action, which generated flash fires under certain conditions. Kitzes Report at p. 5-6; Moro Declaration, Exhibit B. A warning that vapor or mist may cause flash fires is required by rule for highly volatile contact adhesives that are "extremely flammable" and have a flashpoint at or below 20 degrees. 16 C.F.R. § 1500.133. RSC argues that EB-1 does not contain a

OPINION AND ORDER Page 12

contact adhesive, is not "extremely flammable" as defined in the regulations, and has a flashpoint of more than 100 degrees. RSC's CSF ¶¶ 9-11.

Plaintiffs concede that the regulation dealing with contact adhesives does not apply to EB-1, but argue that, based on the facts of this case, flash fires caused by vapors or mist are a principal hazard of EB-1 and should have been warned against.

RSC contends that it is not reasonable to require such a warning on EB-1 because doing so require the court to "second-guess" the agency's decision to require this warning only for extremely flammable materials that vaporize readily at room temperature. Further, RSC argues, the existing regulations are detailed and comprehensive, so that plaintiffs' argument that the additional warning is required for EB-1 goes against the very nature and purpose of the regulations and the FHSA's intent of providing uniform labeling requirements. Third, RSC asserts that a manufacturer's compliance with a literal reading of the regulations is sufficient, and that is unfair to place a manufacturer "at the whim of the creativity of lawyers and litigation experts to create their own theories and testing to fill in the 'gaps' of the regulations and develop particular hazards designed to apply to particular incidents in which their clients were allegedly involved." And finally, RSC argues that the warnings currently on the EB-1 cans adequately warn consumers of the risk of fire if the can or its contents is near heat, sparks or open flame; EB-1 is not misbranded merely because it does not also refer to "flash fires."

Plaintiffs challenge RSC's underlying premise, which is that

OPINION AND ORDER Page 13

manufacturers are not required to provide warnings that are not specified in the regulations applicable to the product at issue. They point out that 1) CPSC regulations do not define "principal hazards;" and 2) nothing in the language of the regulations limits the affirmative statement of principal hazards to the examples provided in the text of the regulation. Plaintiffs' expert, Kitzes, cites a CPSC Advisory Opinion which provides: "Except for the signal word, the FHSA generally does not require particular label language and permits manufacturers to decide on the specific language." Pltfs Response, Exhibit 17. Plaintiffs also point to their evidence that RSC did include warnings about vapor and flash fires on other EB-1 products and similar products.

RSC relies on <u>Moss v. Parks Corp.</u>, 985 F.2d 736, 740 (4th Cir. 1993). In that case, plaintiff was burned while using paint thinner containing mineral spirits. The paint thinner ignited because of a kerosene heater in another room across the hall. Plaintiff asserted that defendant violated the FHSA because the paint thinner's label was not sufficient to alert a consumer to the possibility of a flash fire from mist or vapor coming into contact with the pilot light of the kerosene heater. The court held that the label complied with the FHSA as a matter of law, because it contained all the warnings required by the regulation governing products with mineral spirits. The court noted that the labeling requirements for mineral spirits required *inter aia*, that "hazardous substances bear certain cautionary statements on their labels," such as "signal words," "affirmative statements of the hazards associated with a hazardous substance," and "statements of precautionary measures to follow."

OPINION AND ORDER Page 14

985 F.2d at 740, citing 16 C.F.R. § 1500.121(a)(1). Signal words include "DANGER," "WARNING," OR "CAUTION." Id., citing 16 C.F.R. § 1500.121(a)(2)(vi). Examples of statements of principal hazards given in the regulations included "HARMFUL OR FATAL IF SWALLOWED," "VAPOR HARMFUL," "FLAMMABLE," AND "SKIN AND EYE IRRITANT." Id., citing 16 C.F.R. § 1500.121(a)(2)(vii).

The court held that the "principal hazard associated with mineral spirits is combustibility," so that the paint thinner label containing the warning "COMBUSTIBLE" "satisfies the regulation's mandate of identifying the principal hazard associated with the product." 985 F.2d at 742. The court rejected plaintiff's argument that a more complete warning, such as "in order to use the product safely, it must never be used near an open flame." Id.

Plaintiffs rely on the Milanese case. That case involved two cans, one of primer and the other of enamel. The two products were packaged together. 244 F.3d at 107. The can of enamel carried a comprehensive warning of flammable liquid and vapor, including a statement that the vapor could cause flash fire. The can of primer, however, carried only a warning that the contents were extremely flammable, with harmful vapor. Id. Plaintiff produced an expert who testified about a specific risk of vapor flash fire associated with the use of the primer "as an additional hazard distinct from the flammability of the liquid product." Id. at 112 (emphasis in original).

The manufacturer moved for summary judgment on the ground that plaintiff's claims complied with the FHSA as a matter of law. Id. at 110-11. The court held that there existed a material issue of

OPINION AND ORDER Page 15

1    fact as to whether the danger of flash fire caused by vapor was a

2    primary hazard that was separate and distinct from the flammability

3    of the liquid product. Id. at 112. "Assuming that flash fire from

4    the primer *vapor* is a hazard distinct from the flammability of the

5    *liquid* product, we cannot hold that, as a matter of law, the Primer

6    can fully complies with the FHSA." Id. (emphasis in original). The

7    court concluded that genuine issues of material fact existed on 1)

8    whether vapor flash fire was a principal hazard distinct from, and

9    in addition to, the flammability of the liquid primer; and 2) if so,

10   whether the primer can identified this principal hazard and the

11   necessary precautionary measures. Id. at 113.

12       RSC argues that Milanese is distinguishable on the ground that

13   it involved two differently labeled cans, with the court agreeing

14   with the plaintiff that a vapor flash fire warning on the enamel

15   can, but not on the primer can, could have suggested to a consumer

16   that vapor flash fire was not a hazard of the primer. I do not find

17   this argument persuasive. The court specifically addressed the

18   question of whether the primer can should have carried a warning

19   about an additional primary hazard, i.e., the risk of flash fire

20   from the vapor, and concluded that summary judgment was precluded

21   because of a genuine issue of material fact as to whether vapor

22   flash fire was a principal hazard of the primer.

23       RSC also argues that "to the extent Milanese can be read as a

24   holding that a plaintiff may avoid summary judgment by arguing that

25   a manufacturer must warn against other hazards ... that are not

26   specifically contained in the FHSA regulations, the court

27   incorrectly applied the law." Memorandum, p. 13. RSC contends that

28   OPINION AND ORDER Page 16

the correct analysis is found in <u>Moss</u>.

The <u>Milanese</u> court distinguished <u>Moss</u> on the ground that in the latter case, plaintiff "principally argued that the statement of precautionary measures on the product was not sufficiently explicit or detailed, rather than that it failed to warn of the principal hazard of vapor flash fire as distinct from the general combustibility of the product." 244 F.3d at n. 1. I agree with the <u>Milanese</u> court's analysis, and conclude that <u>Milanese</u> is more directly on point with this case. I conclude that nothing precludes plaintiffs from making a good faith allegation of an additional "principal hazard," and that a genuine issue of material fact precludes summary judgment for RSC on this issue.

   4.   <u>Storage and handling warnings</u>

RSC asserts that the regulations contain no requirements to warn about oxidizers or the need to keep the cap tightly on the can, and that the court should not "rewrite the regulations to include such requirements." Plaintiffs counter that RSC knew EB-1 was incompatible with strong oxidizers, specifically including chlorine and calcium hypochlorite, Beaver dep., Pltfs Resp Exhibit 19 at 219:10-15. They also argue that RSC's expert Moro has acknowledged that if it were foreseeable that EB-1 might come into contact with a strong oxidizer, it would be "appropriate" to include a storage and handling instruction warning the user to keep it away from strong oxidizers.

This issue presents issues of fact about what RSC knew about the combination of EB-1 and strong oxidizers, and whether the potential for combination required a handling and storage warning.

OPINION AND ORDER Page 17

5.  <u>Causation</u>

RSC asserts that the Davidsons were not using EB-1 by spraying it near an open flame, but merely transporting it in a plastic bag. Consequently, it argues, plaintiffs cannot prove that the allegedly inadequate warnings were causally linked to the Davidsons' injuries and deaths. RSC cites plaintiffs' expert Kitzes, who says in the last sentence of his report,

> It is my understanding that Loran Davidson had previously read the label on the cans of EB-1. Had the relevant information been provided on its label by RSC, it appears more likely than not that alternative means to transport the EB-1 would be used.

RSC argues that this conclusion is completely unsupported: 1) the Davidsons were not spraying EB-1 on the day in question, so there is no objective reason why a reference to "flash fires" from "vapor" or "mist" on the label would have changed history on the day of the accident. RSC relies on the Declaration of Loran Davidson, in which Mr. Davidson says that he had used EB-1 for more than 30 years and already knew it was flammable, and that he was not aware that Sock It was in the car or that it was an oxidizing agent. Davidson Declaration ¶¶ 4, 5, 6. Plaintiffs have, as discussed above, submitted evidence that Davidson has on some occasions contradicted these statements.

Nevertheless, RSC argues that a warning about "strong oxidizing household chemicals" on the label would not have changed anything. Similarly, any reference to the possibility that the cap on EB-1 might come off would not have caused Mr. Davidson to change his conduct. <u>Id.</u> at ¶ 7.

Plaintiffs argue that Mr. Davidson himself has testified that

OPINION AND ORDER Page 18

he now has altered his conduct in handling EB-1, since learning that Oregon investigators found that EB-1 had released from its packaging and contributed to the fire. He testified that he now keeps EB-1 away from other products and uses caution in his handling of the product. Further, plaintiffs argue, Mr. Davidson testified that he did not know EB-1 had diesel fuel in it, although he knew diesel fuel was flammable. See Davidson dep., Pltfs Resp Exhibit 22 46:1-14.

It is not appropriate to weigh these competing arguments or resolve them on summary judgment unless I can conclude no reasonable juror could differ on their resolution. I conclude that there are issues of material fact about causation that must be decided by the jury.

**Conclusion**

RSC's motion for summary judgment on plaintiffs' failure to warn claim (doc. # 232) is GRANTED with respect to the common or usual name and accompanying literature claims, and DENIED with respect to the other claims.


IT IS SO ORDERED.


Dated this 16th day of November, 2010.

/s/ Dennis J. Hubel

_____

Dennis James Hubel
United States Magistrate Judge

OPINION AND ORDER Page 19