IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ARCH CHEMICALS, INC.,
a Virginia corporation, and
LEXINGTON INSURANCE COMPANY,
a Massachusetts corporation,

          Plaintiffs,

   v.

RADIATOR SPECIALTY COMPANY,
a North Carolina corporation,

          Defendant.

Civil No. 07-1339-HU

ORDER

HUBEL, Magistrate Judge.

    I have reviewed the documents I could open with the court's computer from the CD provided by counsel for Radiator Specialty Company containing the emails regarding the Marty French data which was not provided with his expert disclosures, nor at his deposition in late July, 2010. The materials received from defendant's counsel today that relate to the issue of what Mr. French produced to the plaintiffs and what he can rely on in his testimony at trial are marked as court exhibits 6 and 7. Some of the information was provided to the plaintiffs' lawyers on December 16, 2010. The rest appears to have been delivered by email to them on February 6, 2011, between 3 and

4 PM and some further email exchanged hands on the morning of February 7, 2011, the first day of trial. This last email on the 7th however did not have any data from Mr. French associated with it. With respect to the data on the CD, I was able to open it with the exception of the files with a file extension of *.ms.

The data on the CD that I could open appears to represent that it was generated by Mr. French or his laboratory on or about March 31, 2009, although not every file shows a date. Looking at the file properties on the CD is of no help because those files were generated today when defense counsel copied them to the CD for delivery to the court. Based on the representations of defense counsel, for purposes of deciding the issue raised by plaintiff's counsel regarding what use, if any, Mr. French may make of this late produced data, I assume it was all generated in the March, 31, 2009, time period.

The data is claimed to be important from the standpoint that it supports Mr. French's report and original opinions regarding the presence or absence of brake fluid in the Gunk Engine Brite product manufactured by the defendant and present in the Davidson's car on the day of the fire in the underlying case. It also is important to the defense for the same purpose with respect to the contents of one or more samples of Gunk Engine Brite prepared for testing by the defendant and available for the use of experts on both sides of this case as discovery progressed. Apparently at his deposition it was discovered that the data recently produced was missing. It also developed at the deposition of Mr. French that without this data, he apparently conceded there were some errors in his conclusions and opinions regarding the presence or absence of brake fluid as a constituent of the Gunk Engine Brite samples prepared by defendant during discovery in this case and perhaps with

respect to the constituents of the product of defendant that was present in the Davidson car on the day of the fire.

Plaintiffs claim that this failure to produce this data at the time of expert disclosures, at the time of the deposition of the defendant's expert, Mr. French, or thereafter until mid December 2010, for the first information, and the day before trial started for the balance of the information, warrants the exclusion of any of this data from the information on which Mr. French is allowed to base his opinions on now. For instance, the witness statement for Mr. French indicates he wants to "clarify his deposition testimony" based on this data, and plaintiff objects based on FRCP 26(a)(2)(B), particularly (ii) and 37, presumably (c)(1). Rule 26(a)(2)(B) and this court's scheduling orders are the source of the obligation to produce the data involved in this issue. Rule 37(c)(1) and 37(b)(2)(A)(i)-(vi) are the source of the authority to sanction the defendant for the failure to produce the information.

The data involved clearly falls within that which is required to be produced by FRCP 26(a)(2)(B). FRCP 37(c)(1) precludes the use of the information by the witness "...unless the failure was substantially justified or is harmless." On this record the failure to produce the data is not harmless. It is offered very late in an attempt to rescue an expert from an admission he made in his deposition prior to trial in which he apparently acknowledges his opinions and conclusion on an issue were wrong. We can quibble about whether that is clarification of a deponent's testimony, but producing detailed gas chromatography data that requires expert interpretation on the Sunday afternoon before a trial scheduled to last 14 days with 51 potential witnesses is not harmless.

Was the delayed production substantially justified? The data was generated on or about March 31, 2009. The deadline for expert disclosures was April 29, 2009. The parties were given an opportunity to supplement their expert disclosures after a hearing on May 4, 2009, clarifying the level of detail expected in expert's disclosures. By June 8, 2009, the parties were to mutually exchange any videos, photographs, and lab data regarding any testing done by their experts. Defendant's supplemental expert disclosures beyond this data was due by July 17, 2009. (See June 1, 2009, transcript, pages 90-98.) The deadline for close of all expert discovery was ultimately set for July 30, 2010. In late July of 2010, the deposition of Mr. French was taken and the fact that data was missing came to light. Thereafter, the defendant requested to extend the deadline for expert depositions for two of its experts. At a hearing on August 13, 2010, the court allowed the deposition of John Lentini to be taken August 24, 2010, and the deposition of Sullivan Curran to be taken not later than October 10, 2010. No one brought to the court's attention at this August 13, 2009, hearing any issue about the failure of Mr. French to provide this data. On September 2, 2010, Mr. Johnson representing the plaintiffs sent an email to Mr. Xochihua representing defendant detailing what documents were not produced during or prior to Mr. French's deposition and requesting them. The fact that they should have been produced much earlier was discussed, and issues were raised regarding what effect the delayed production would have on Mr. French's testimony. Court exhibit 6 sets forth the chain of email correspondence between the parties on this subject culminating in a December 16, 2010 email to Mr Johnson explaining the issues confronting Mr. French starting with the day of his deposition and thereafter. This email also transmitted some apparently small portion of the data requested.

Assuming without deciding that the explanation offered in the December 16, 2010 email

from Mr. Xochihua is "substantial justification" for Mr. French's failure to disclose the information between the day of his deposition in late July 2010 until December 16, 2010, no satisfactory explanation has been offered for the failure to produce the data with either the first expert disclosures due for defendant on April 6, 2009, nor the failure to supplement his disclosures at any time prior to or during his late July 2010 deposition. Likewise, there is no explanation offered for the failure to produce the vast majority of the information between December 16, 2010 and February 6, 2011. The record does not support a finding of "substantial justification" for the failure to produce the data missing from Mr. French's expert disclosures. Therefore this missing data cannot be used by the defense under FRCP 37(c)(1). Mr. French is precluded from relying on this data in his attempt to clarify his deposition testimony. While it does not appear to be defense counsel's fault in any way that Mr. French did not produce the data, the reason for disclosure requirements is to enable the opposing party to properly prepare for trial. The rules make it clear that the burden of a failure to disclose or late disclosure should not be borne by the plaintiffs in this case.

DATED this 11th day of February, 2011.

/s/ Dennis J. Hubel

Dennis James Hubel
United States Magistrate Judge