IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ARCH CHEMICALS, INC.,
a Virginia corporation, and
LEXINGTON INSURANCE COMPANY,
a Massachusetts corporation,

        Plaintiffs,

    v.

RADIATOR SPECIALTY COMPANY,
a North Carolina corporation,

        Defendant.

Civil No. 07-1339-HU

Order on Plaintiffs' Oral
Motion in Limine to Exclude
Evidence of Willful and Wanton
Misconduct

HUBEL, Magistrate Judge.

    During the pretrial conference while discussing the plaintiffs' motions in limine and the evidence defendant had indicated it would be offering at trial, the court noted the similarity between the proffered evidence and the issue addressed by Plaintiffs' motion for partial summary judgment to eliminate the affirmative defense alleging there is no right to contribution for punitive damage liability [dkt #314].  In that motion plaintiffs

1  had sought an order that there  being no material issue of fact
2  that the settlement with the Davidson family did not include any
3  payment for punitive damages.   That motion for partial summary
4  judgment was granted for the reasons stated in the opinion and
5  order filed on December 13, 2010, pages 10 to 14. [dkt#387]
6      At the time this motion [dkt# 314] was filed by the
7  plaintiffs, the amended answer the defendant had sought and been
8  granted leave to file in an order dated June 30, 2009, had not been
9  filed by the defendant despite the approaching trial.  The form of
10 answer defendant had sought leave to file had a Fifth Affirmative
11 Defense (Failure to Apportion Punitive and Compensatory damages)
12 and a Sixth Affirmative Defense (Willful and Wanton Misconduct).
13 The Fifth Defense was based on the failure to apportion punitive
14 and compensatory damages in the Settlement Agreement resolving the
15 Davidsons' claims.  It was argued that this failure caused the
16 entire contribution action to fail since contribution is not
17 available for punitive damages and with the amount of punitive
18 damages paid for the release being unknown, no contribution could
19 be obtained by plaintiffs.  The Sixth Defense alleged that Arch
20 Chemicals conduct creating liability to the Davidsons was willful
21 and wanton and as a result contribution was barred by O.R.S.
22 31.600.  Both defenses rely on the premise that punitive damages or
23 damages flowing from willful and wanton conduct are personal to the
24 actor and under Oregon law cannot be subject to joint liability
25 which is necessary to support a contribution claim.
26     Seventeen days after the opinion and order granting the
27 plaintiffs summary judgment against the fifth affirmative defense,
28 the defendant for the first time since being granted leave on June

2 - OPINION AND ORDER

1   30, 2009,  filed its revised amended answer on December 30, 2010.
2   It raised the same two defenses despite the December 13, 2010
3   opinion and order.  As a result plaintiff filed motions in limine
4   to exclude the evidence defendant planned to offer on the punitive
5   damages fifth affirmative defense and it encompassed the evidence
6   that was offered on the willful and wanton defense.  See document
7   # 441.

8       When I granted the motion in limine, defense counsel asked if
9   the court was striking the willful and wanton misconduct defense.
10  The effect of my order does strike the defense and upon further
11  reflection and review of defendant's authorities and arguments I
12  reaffirm that ruling.

13      As the Fifth Affirmative Defense description chosen by the
14  defendant notes, it is a defense based on the failure to apportion
15  punitive and compensatory damages in the settlement agreement with
16  the Davidsons.  It has never been the defendant's position that
17  compensatory damages were not subject to an action for
18  contribution. It is unclear if the Sixth Affirmative defense tries
19  to approach the issue from perhaps a different angle, claiming that
20  all the liability of Arch for compensatory and punitive damages is
21  based on Arch's alleged willful and wanton misconduct and thus not
22  able to support a contribution claim.  The damages award for
23  compensatory damages are intended to make the plaintiff who was
24  injured whole as best a money award can accomplish that.  Punitive
25  damages on the other hand are intended to punish the defendant
26  whose conduct is sufficiently culpable and deter others from acting
27  in a similar manner.  Because punitive damages are measured by the
28  particulars of each defendant's conduct, the defendant argues that

3 - OPINION AND ORDER

joint liability, necessary to support a contribution action, cannot
be established for these exemplary damages under Oregon law,
relying on Shin v. Sunriver Prepatory School Inc., 199 Or. App.
352, 111 P.3d 762 (2005) and Andino v. Tamarack Steakhouse and
Saloon, LLC, 2005 WL 1182362 (9th Cir. 2005).

These cases do not address the situation before this court.
Shin was a case where a former international student sued a private
boarding school for negligently failing to supervise the student
while her father visited resulting in the father raping and
sexually abusing the student.  At trial before a jury, the school
sought to have the jury apportion fault for the injuries sustained
by the plaintiff between it (based on claims of negligence) and the
father (based on alleged intentional torts in the third party
complaint).  The trial court found that the comparative fault
statute did not allow such a comparison of intentional fault with
negligent fault.  On appeal, the Court of Appeals affirmed noting
that:

> "***From what we glean that 'fault' as used in the 1975
> amendments-now codified at ORS 30.600 and ORS 30.605-
> includes 'tortious conduct, however described, in which
> contributory negligence is an appropriate defense.'
> [citation omitted] Before the adoption of comparative
> fault, contributory negligence was not a defense to
> willful or intentional misconduct. [citations omitted]
> Accordingly, intentional misconduct is not 'fault'
> subject to apportionment within the meaning of ORS 30.600
> and 30.605."

Shin, 199 Or. App. at 376.

The Shin case involved the intentional torts of the father.
The father had been joined by Sunriver Prep as a third party
defendant.  The reported opinion never mentions what tort theory
was alleged to create the father's liability, but it is clear the

4 - OPINION AND ORDER

court of appeals treated it as an intentional tort. Indeed, when the court summarized its holding it abandoned the needlessly broad language about willful conduct cited above and said "***ORS 31.600 [sic, presumably the court meant ORS 30.600 as it cited to earlier] and related statutes do not encompass intentional conduct to which contributory negligence was not a defense." <u>Shin</u>, 199 Or. App. at 379.

Oregon case law has an interesting wrinkle with respect to intentional torts. It takes the position that some intentional torts include an element of subjective intent to harm the victim, while other intentional torts, such as battery, do not. Indeed, one case noted that battery, while an intentional tort, has a lesser included tort of negligently inflicted injury. <u>See</u>, <u>Ledford v. Gutoski</u>, 319 Or. 397, 405, 877 P.2d 80 (1994):

> "The subjective intent of the defendant is an element of malicious prosecution. That is not the case with respect to some other intentional torts, such as battery, as to which this court has concluded that the inference of an intent to cause harm does not apply. Those other intentional torts have 'lesser included torts,' such as negligence, under which liability may be imposed for similar conduct without any subjective intent to cause harm."

While <u>Shin</u> does not identify the tort alleged against the father, the court of appeals presumably found it embodied a subjective intent to harm such that a lesser included tort such as negligence would not support liability that could be apportioned. Absent from the <u>Shin</u> case is any discussion of apportioning damages. It is a case that addresses apportioning fault. The subject of punitive damages is not present in <u>Shin's</u> discussion of apportioning fault.

5 - OPINION AND ORDER

1       That being said, taking Shin literally for the moment, the
2   question is whether willful and wanton misconduct or any conduct
3   leading to liability for punitive damages was subject to a defense
4   of contributory negligence before the adoption of comparative
5   fault.   In Blunt v Bocci et al, 74 Or. App. 697 , 704 P.2d 534
6   (1985), a motorist injured in an auto accident sued the estate of
7   the deceased driver of the other car and the club that allegedly
8   served him alcohol when he was visibly intoxicated.  The successful
9   plaintiff recovered punitive damages against the club.

10      In Grady v. Cedar Side Inn, Inc, 330 Or. 42, 997 P.2d 197
11  (2000), a passenger injured in an auto accident sued his own driver
12  and the convenience store that had sold both the plaintiff and his
13  driver alcohol when the driver was visibly intoxicated.  The store
14  argued on appeal that plaintiff, being complicit in the drinking,
15  was barred from having any claim for his injuries.  The Supreme
16  Court noted this was a case of first impression in Oregon.  It
17  found that to bar the claim outright as suggested by the defendant
18  would reestablish contributory negligence as a defense which the
19  legislature had abolished.  The court went on to say that the
20  complicity of the plaintiff was properly treated under Oregon's
21  comparative fault scheme as fault for the jury to apportion between
22  the plaintiff and the defendant.  Grady, 330 Or. at 46-7.

23      Assuming without deciding that the Oregon Supreme Court would
24  follow the Court of Appeals decision in Shin, and reading Grady and
25  Blunt together, it appears the Supreme Court would not extend the
26  holding that fault cannot be apportioned between intentional torts
27  and negligence to all situations involving liability for punitive
28  damages.  Since the Supreme Court is aware that punitive damages

6 - OPINION AND ORDER

1  are recoverable in cases like Blunt where an establishment serves
2  a visibly intoxicated person who later injures a third party, and
3  yet any fault of the injured plaintiff can be compared to the fault
4  of the establishment under Grady , the implication seems clear that
5  some damages can be apportioned according to fault between the
6  defendant who may be liable for punitive damages and the plaintiff
7  who is guilty of only simple negligence.  While I acknowledge the
8  Grady and Blunt decisions do not address directly the apportionment
9  of punitive damages, neither did Shin.  So the question of an
10 apportionment for fault leading to liability for punitive damages
11 remains after these cases.

12     I note also the opinion in Sandford v. Chevrolet Division of
13 General Motors, 292 Or. 590, 642 P.2d 624 (1982).  While it is an
14 opinion many might rather forget, it does decide an issue of some
15 significance here.  It did hold that in a products liability claim
16 against a manufacturer of an allegedly defective product, the
17 injured plaintiff is subject to a defense of comparative fault.
18 The number of cases where  a strict product liability plaintiff
19 received an award of punitive damages against a manufacturer are
20 too numerous to cite.

21     The court has found a case that does address the question of
22 comparing fault of an injured plaintiff with that of a defendant
23 and differentiates between compensatory damages and punitive
24 damages. Waddill v. Anchor Hocking, Inc., 175 Or. App. 294 (2001),
25 involved a plaintiff who received a verdict assigning 25% fault to
26 plaintiff and 75% fault to defendant.  Compensatory damages were
27 found to be $134,472 and punitive damages were set at $1,000,000.
28 Judgment was entered after reducing the compensatory damages by 25%

7 - OPINION AND ORDER

1    with no reduction in the punitive damages in the sum of $1,100,854.
2    On appeal the defendant argued the punitive damages should have
3    been reduced by 25% as well.

4         In rejecting defendant's argument, the court of appeals noted
5    that there is a different purpose for compensatory damages and
6    punitive damages, as well as a different basis of liability for
7    them.  Compensatory damages are intended to compensate the
8    plaintiff for that portion of his or her damages caused by
9    defendant's conduct in order to make the plaintiff whole.  Punitive
10   damages on the other hand are not intended to compensate the
11   plaintiff, but rather to punish the defendant for particularly
12   egregious conduct and to deter others form engaging in that
13   conduct.  The court found no basis for reducing the punitive
14   damages by the percentage of plaintiff's fault because plaintiff's
15   fault did not cause the defendant's conduct to which the punitive
16   damages are intended to respond.

17        Turning back to the opinion and order granting the summary
18   judgment to plaintiffs on the fifth affirmative defense related to
19   a failure to apportion the punitive damages from the compensatory
20   damages in the Davidson settlement, all the evidence supported but
21   one conclusion.  There were no punitive damages paid to obtain that
22   release.  Indeed, looking at the record of this case one finds the
23   declaration of J. Michael Alexander, one of the attorney's
24   representing the Davidsons. [dkt#135. filed April 3, 2009].  There
25   he explains why the settlement never contemplated any amount for
26   punitive damages, but only included compensatory damages.

27             "5. The claim for compensatory damages in this case
           was fully supported by the evidence.  Indeed, as noted
28         above, the survivors suffered serious burns and had

8 - OPINION AND ORDER

significant economic damages.  In addition, part of their
own recoverable non-economic damages related to the
emotional trauma suffered by the parents and their son.
     The parents had properly seat belted their children
in the vehicle.  Then, after this fire suddenly erupted
in the vehicle they were able to exit, both of them on
fire themselves.  They then tried to rescue their two
younger children who could not get out of their
seatbelts.  The parents were forced to watch while their
children burned to death in front of their eyes.  There
were five seasoned lawyers working on behalf of the
plaintiffs.  I don't think that any of us had ever
encountered a more compelling case for the recovery of
non-economic damages. We felt a recovery of non-economic
damages in excess of $50 million was certainly possible
if not probable.

                              ***

     ***There was never any consideration for allocating
any part of the settlement for punitive damages.  Indeed,
the settlement itself *** contemplated that all payments
were on account of personal injury, and did not include
punitive damages.  Had Arch tried to allocate any amount
as payment for punitive damages, which did not occur, we
would have demanded a much greater settlement.  As it was
the settlement reached was a substantial compromise of
the economic and non-economic damages that were not only
claimed but that could have been recovered if it were a
Plaintiff's verdict."

Declaration of J. Michael Alexander [dkt#135] pages 3-4.

     As I was preparing this written opinion I had occasion to
listen to the description of the fire by Mrs. Hibdon, a witness who
immediately came upon the scene. Her account, given nearly 9 years
after this fire was chilling.  She described the horrible scene
presented to the mother and father, on fire themselves, and forced
to endure the holocaust-like scene of their youngest children dying
a painful, unimaginable death, which is no doubt seared into their
memories.  This certainly supports Mr. Alexander's declaration
about the damages recoverable and the substantial compromise made
to settle those claims.  However, even without this testimony of
Mrs. Hibdon, no reasonable inference of a payment of punitive

9 - OPINION AND ORDER

1  damages in this settlement can be made from this record.

2      The case of <u>Patton v. Target Corp.</u>, 349 Or. 230, 242 P.3d 611

3  (2010) is relevant to this discussion as well.  The case involved

4  a wrongful discharge case that went to trial in our court.  A

5  verdict was returned for compensatory damages and punitive damages

6  against the employer.  Post verdict and prior to entry of any

7  judgment the parties entered a settlement which called for a

8  stipulated judgment dismissing the case.  It was undisputed that

9  the settlement did not include any payment for punitive damages.

10  While defendant RSC here contends there must have been punitive

11  damages in the Davidson settlement, there was no evidence to

12  support that position  on summary judgment and none offered now.

13  It remains undisputed that no punitive damages were paid to the

14  Davidsons.   While the <u>Patton</u> case largely involved statutory

15  construction issues, it clearly depends in part on the freedom of

16  the parties to contract for the release of claims and payment of

17  damages as they choose to characterize the payments.  In <u>Patton</u> the

18  State of Oregon lost its potential claim to 60% of the $900,000.00

19  in punitive damages awarded by a jury's verdict, but which

20  evaporated with the settlement before it was reduced to judgment.

21  The Supreme Court characterized the State as having at most an

22  economic expectancy.  If parties are free to contractually agree to

23  settle in this situation and allocate nothing to punitive damages,

24  surely they can do so before the injured party goes to trial or

25  obtains a verdict for any damages, compensatory or punitive.  The

26  defendant who settles not only buys its peace with the plaintiff,

27  but avoids the possibility that it may not be able to recover

28  contribution for the punitive damages from other released

10 - OPINION AND ORDER

tortfeasors. The defendant in RSC's position must surely have less than an economic expectancy and more like an evanescent hope it could avoid contribution for punitive damages that were never addressed, much less assessed by a jury, and reduced to judgment.

For all these reasons, I adhere to my opinion and order [dkt#387] and extend it to dismiss the sixth affirmative defense. Only compensatory damages were paid under the settlement with the Davidsons. Compensatory damages are subject to a contribution claim in Oregon. There is no distinction between the compensatory damages recoverable for negligence, or any other level of culpability. Compensatory damages are measured not by the conduct of the defendant, but by the injuries of the plaintiff. While I can understand the argument that punitive damages are measured by the conduct of the defendant and liability for conduct subjectively intended to harm should not be able to be compared with simple negligence, even if the Supreme Court of Oregon were to adopt that view, it has no application here where there was no payment of any amount for punitive damages.

IT IS SO ORDERED,

Dated this   11th   day of February , 2011.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge

11 - OPINION AND ORDER